**CITIES SERVICE GAS COMPANY and Cities Service Company, Petitioners,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

No. ¥538.

United States Court of Appeals
Tenth Circuit.

Oct. 9, 1964.

Harry S. Littman, Washington, D. C. (Conrad C. Mount, Oklahoma City, Okl., Jack Werner, Washington, D. C., Geo. H. Hill, Jr., Gen. Counsel, Melvin Richter and Richard Littell, Washington, D. C., with him on brief), for petitioners.

Richard A. Solomon, Washington, D. C. (Howard E. Wahrenbrock, Abraham R. Spalter and Cyril S. Wofsy, Washington, D. C., with him on brief), for respondent.

Before MURRAH, Chief Judge, HILL, Circuit Judge, and ARRAJ, District Judge.

MURRAH, Chief Judge.

In an order of the Federal Power Commission approving a settlement of the rates charged by Cities Service Gas Company for jurisdictional gas sales, the Commission reserved for future determination the Federal income tax allowance to be included in the cost of service underlying the approved settlement. This appeal is from a final order of the Commission determining that sole issue.

The stipulated settlement included as a part of the cost of service a tax allowance based upon the statutory corporate income tax rate of 52 percent applied to the agreed taxable income of the Gas Company for the test year 1958. And, that amount would be routinely granted as a cost of service but for the Gas Company's participation in consolidated returns filed by its parent, Cities Service Company.

Having elected to file consolidated returns under Section 1501, 26 U.S.C., Cities Service was required by Section 1504, 26 U.S.C., to include all affiliates in which it owns 80 percent or more of the stock. Under the consolidated returns the total tax liability was less than it would have been if each subsidiary had filed separate returns. The reduction in the total tax liability resulted from offsetting the losses incurred by certain nonregulated affiliates against the taxable income of all other affiliates; and the Commission determined a tax allowance which reflected the so-called "tax savings" effected by the consolidated returns. The decisive question is whether the Commission, in the exercise of its undoubted power to determine just and reasonable rates for jurisdictional gas sales, may, in these circumstances, take into account the losses of nonregulated and unrelated affiliates to calculate the tax allowance includible in the cost of service of a regulated company.

The Commission recognized the fundamental rate-making principle which requires a separation of regulated and nonregulated profits and losses in the determination of the tax allowance. And see

Colorado Interstate Gas Co. v. F.P.C., 324 U.S. 581, 65 S.Ct. 829, 89 L.Ed. 1206; Panhandle Eastern Pipe Line Co. v. F.P.C., 324 U.S. 635, 65 S.Ct. 821, 89 L.Ed. 1241. In obedience to this principle, the majority of the Commission rejected its Staff's theory which determined the tax allowance by taking the ratio of the Gas Company's income to the total income of the profit-making companies and applying this percentage to the total tax liability. The Commission characterized this theory as possessing "a quality of artificiality and instability which renders it unsatisfactory for rate-making purposes."

The majority of the Commission also rejected the determinations and recommendations of its Examiner who discarded the Staff's theory in favor of the settlement allowance based upon the statutory 52 percent rate. The Examiner could find no authority to support the theory that "consumers of natural gas sold in interstate commerce should have the benefit of 'tax savings' derived from business losses of unregulated corporations whose business activities are entirely unconnected with and dissimilar to those of the regulated natural gas company transporting and selling such gas."

Proceeding on the established premise that only actual costs—hence actual taxes—are properly includible in a rate base, a majority of the Commission held that the consolidated income tax liability is the "only real cost which was incurred by Gas Company in conjunction with the other Cities Service affiliates", and that to accept the Gas Company's approach based upon the statutory 52 percent rate would have the effect of determining ju-

risdictional rates "on the basis of converting a hypothetical tax payment into a prudent operating expense."

To comply with the rate-making principle of separating regulated and non-regulated profits and losses, and in conformity with the equally controlling actual cost concept, the majority of the Commission devised a "method to be applied in computing the Federal income taxes to be included in the cost of service of a regulated company where the company has joined in a consolidated tax return with affiliates * * * (1) separate the companies into regulated and unregulated groups, (2) determine the net aggregate taxable income of each group, and (3) apportion the net total consolidated tax liability over a representative period of time between the two groups, and among the companies in the regulated group, on the basis of their respective taxable incomes; provided that the allowance so computed for the regulated company shall not exceed what its tax liability would be for rate-making purposes, if computed on a separate return basis."[1]

As the basis for the application of this formula, the majority first selected the consolidated returns filed for the years 1957, 1958 and 1959. After separating the affiliates into regulated and nonregulated groups, the Commission determined that during the pertinent period the nonregulated companies had no net taxable income and that no tax liability should therefore be assigned to that group. The total taxable income of the regulated affiliates, which included companies regulated by other Federal and State agencies[2] was determined to

[1.] One Commissioner would have adopted the Staff's theory but reluctantly joined two Commissioners in applying the above described method in order to form a working majority. The other two Commissioners dissented, contending that the Examiner's recommendations should be adopted. The dissenters were of the opinion that "Apart from the fact that there are no tax savings attributable to the inclusion of Gas Company in the consolidated return, the majority view is

unlawful because it has the effect of regulating nonutility enterprises beyond the Commission's jurisdiction."

[2.] Included by the Commission in the so-called "regulated" group, in addition to the Gas Company, are Cities Service Pipe Line Co., and Lafitte Oil Traders, Inc., both subject to regulation by the Interstate Commerce Commission, and Kansas Gas Supply Company, subject to regulation by the Kansas Commission. Also included in this group is that por-

be $61,652,662, of which the Gas Company's share was 67.93 percent. This percentage was then applied to the normalized consolidated tax liability of all affiliates, an average of $8,636,607 a year, to arrive at the tax allowance of $5,-866,847. The stipulated settlement had provided for a tax allowance of $7,055,-981 based upon the statutory rate of 52 percent of the net separate taxable income of the Gas Company in 1958. The difference between these two sums is the bone of contention.

We think it is legally fallacious to calculate the Gas Company's tax allowance on the basis of the consolidated tax liability of the parent Company. This approach cannot be justified by the actualities of the case. The uncontroverted facts show that the Gas Company not only incurred a tax liability during the representative years at the statutory 52 percent rate, but its tax liability at that rate was reported to the parent Company, and the consolidated returns actually reflect that tax liability.

Thus the consolidated return for 1957 shows a consolidated tax liability of $12,-251,639 paid by Cities Service. If the Gas Company had filed a separate return, the consolidated tax liability would have amounted to $6,391,241, and the Gas Company's tax would have been $5,860,398 based upon the statutory 52 percent rate. The sum of these amounts precisely equals that which was actually paid by Cities Service. From this it is demonstrably clear that the inclusion of the Gas Company in the consolidated return increased the consolidated tax liability by 52 percent of the Gas Company's taxable income. No "tax savings" resulted from the inclusion of the Gas Company in the consolidated return.

Similarly, in both 1958 and 1959 the inclusion of the Gas Company in the consolidated returns directly affected the consolidated tax liability in the amount of 52 percent of the Gas Company's taxable income, notwithstanding the fact that in those years the other Cities Service affiliates had aggregate tax losses. Application of the loss carry-back provisions of the Internal Revenue Code permit the offsetting of these losses against the taxable income of these affiliates in 1955 and 1956,[3] thereby resulting in tax refunds. No reduction in the actual total tax liability was thus effected since the net effect of the inclusion of the Gas Company in the 1958 and 1959 consolidated returns was to reduce the refund by 52 percent of the Gas Company's taxable income. See table below.[4] The simple fact is that the tax liability of the Gas Company as reflected in the consolidated returns was not hypothetical, but an actual cost to the Gas Company.

We know, of course, that the Commission is free to choose most any method which it deems appropriate in

tion of the income of Cities Service Gas Producing Co. and Cities Service Oil Co.—Delaware—subject to regulation by the Federal Power Commission. These companies, however, are primarily engaged in the wholly unregulated oil business.

3. The regulations promulgated pursuant to § 1502, 26 U.S.C. provide in accordance with § 172, 26 U.S.C. that a net loss in any year can be carried back to the three preceding years or carried forward to the succeeding five years. 26 C.F.R. Part 1, § 1.1502–31(a) (4).

4.

| Year | (1) Consolidated Tax (including Gas Company) | (2) Consolidated Tax (excluding Gas Company) | (3) Gas Company's Separate Tax | (4) Sum of (2) plus (3) |
|---|---|---|---|---|
| 1957 | $12,251,639 | $ 6,391,241 | $5,860,398 | $12,251,639 |
| 1958 | (3,857,132) | (10,224,666) | 6,367,534 | (3,857,132) |
| 1959 | 2,965,014 | ( 6,566,531) | 9,531,545 | 2,965,014 |

the determination of just and reasonable rates for jurisdictional gas sales—usually a legitimate end justifies the means. See: Colorado Interstate Gas Co. v. F.P.C., supra; Panhandle Eastern Pipe Line Co. v. F.P.C., supra; Wisconsin v. F.P.C., 373 U.S. 294, 83 S. Ct. 1266, 10 L.Ed.2d 357. But, we know equally well that the method utilized must surely be within acknowledged jurisdictional limits which require an effective separation of regulated and nonregulated activities for the determination of the ingredients of the rate base. As applied to our case, it means a separation of profits and losses between regulated and nonregulated businesses in determining the tax allowance includible in the cost of service of the regulated company. "Otherwise the profits or losses, as the case may be, of the unregulated business would be assigned to the regulated business and the Commission would transgress the jurisdictional lines which Congress wrote into the Act." Panhandle Eastern Pipe Line Co. v. F.P.C., supra, 324 U.S. p. 641, 65 S.Ct. p. 825.

And, as we have seen, the total tax liability is not affected when the Gas Company's tax liability at the 52 percent rate is included in the consolidated returns. Rather, the reduction in the total tax liability effected by the consolidated returns is due to the losses of the nonregulated companies. But, even so, under the Commission's method, the tax allowance of the Gas Company is made to depend upon the profits or losses, as the case may be, of the nonregulated companies.

It is thus plain that the apportionment of the total tax liability among the regulated companies fails to comply with the jurisdictional requirement for the separation of regulated and nonregulated profits and losses which Congress wrote into the Act, and which the Commission prescribed for itself. The Commission's method is therefore unauthorized and its order based thereon must be set aside.