182 So.2d 674 (1965)
TRUNKLINE GAS COMPANY, Plaintiff-Appellee,
v.
COLLECTOR OF REVENUE, Defendant-Appellant.
No. 6486.
Court of Appeal of Louisiana, First Circuit.
December 21, 1965.
Rehearing Denied January 24, 1966.
Writ Refused March 28, 1966.
*675 Cyrus J. Greco, Chapman L. Sanford, John B. Smullin, Baton Rouge, for appellant.
C. McVea Oliver, of Oliver, Digby & Fudickar, Monroe, Chester J. Coco, Marksville, for appellee.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.
BAILES, Judge.
The Collector of Revenue of the State of Louisiana, defendant-appellant herein, appeals from the judgment of the trial court decreeing that plaintiff-appellee was entitled to full credit deduction in computing net income the amount of federal income taxes it owed to the federal government on the basis of its separate income tax return. This income tax return was not filed with the federal government but the data thereof consolidated with other wholly owned subsidiaries of the parent company, Panhandle Eastern Pipe Line Company, which resulted in the payment by the parent company of an amount of federal income tax less than the total aggregate of federal income tax due by all of the affiliates.
Herein Trunkline Gas Company will be most of the time referred to simply as Trunkline, and the Collector of Revenue as Collector.
The Collector of Revenue assessed Trunkline Gas Company with additional income tax and interest on returns filed by it for the years 1957, 1958 and 1959. Trunkline paid the additional tax and interest under protest and then filed with the Louisiana Board of Tax Appeals a petition for a redetermination of the assessment levied by the Collector. The case was heard by the Board of Tax Appeals on a stipulation of facts, and the Board of Tax Appeals upheld the Collector's assessment. Trunkline then filed this suit in the Nineteenth Judicial District Court for a review of the decision of the Board of Tax Appeals.
The facts stipulated to by the parties to this action are the following:
"1. Petitioner is a Delaware Corporation, qualified to do business in Louisiana, and is engaged in the business of buying, transporting, and selling natural gas in interstate commerce. It operates a natural gas pipeline originating at a point in Texas near McAllen, Texas, through the states of Texas, Louisiana, Arkansas, Mississippi, Tennessee, Kentucky, Illinois, and terminates at the Indiana-Michigan Border.
"2. Trunkline Gas Company has filed with the State of Louisiana income tax *676 returns showing a net allocable income earned within or derived from sources within Louisiana, as defined in R.S. 47:243, and net apportionable income derived from sources in this State, as defined in R.S. 47:244, as follows:

For the year 1957: $628,477.00;
For the year 1958: $641,897.00;
For the year 1959: $248,297.00.

"3. The determination of income set forth in the preceding stipulation is admitted to be correct.
"4. Petitioner is a wholly owned subsidiary of Panhandle Eastern Pipe Line Company. Panhandle Eastern Pipe Line and its subsidiaries, including petitioner, filed consolidated federal income tax returns for the years in question.
"5. Petitioner computes its federal income tax liability on a separate return basis as though it were not a member of the consolidated group, and draws a check for the amount of federal income tax so computed, either to its parent or to the federal government and forwards both the computations and the check to its parent, Panhandle Eastern Pipe Line Company.
"6. Panhandle Eastern Pipe Line Company then computes the amount of the group's tax liability on a consolidated basis and forwards the Internal Revenue Service the consolidated federal income tax return and its check along with any check received from the subsidiary and other members of the consolidated group drawn to the Internal Revenue Service in payment of the consolidated federal income tax liability.
"7. Federal income tax computed on a separate return basis under the Internal Revenue Code of 1954 on earnings of Trunkline Gas Company used in determining Trunkline's earnings derived from sources within Louisiana is as follows:

For the year 1957: $2,775,449.00;
For the year 1958: $2,779,389.00;
For the year 1959: $1,314,199.00.

"8. In determining net income subject to tax under the provisions of Title 47 of the Louisiana Revised Statutes, Trunkline Gas Company has deducted from the net allocable income earned within or derived from sources within this state and the net apportionable income derived from sources in this state for the years 1957, 1958, and 1959, respectively, the proportionate part of the federal income taxes set forth in paragraph 7 above attributable to Louisiana income.
"9. As a result of a field examination of petitioner's Louisiana income tax returns for the calendar years 1957, 1958, and 1959, and Collector proposed an assessment of additional income tax as detailed below:

 Amount of Proposed
Tax Period Assessment
---------- -----------
 1957 $291.21
 1958 791.50
 1959 488.55

The Collector in computing the amount of Federal income tax to be allowed as a deduction on the Louisiana income tax return for each of the above years allocated the consolidated federal income tax liability among members of the group on the basis of the ratio of the petitioner's federal net income tax on a separate return basis to the total separate return basis to the total separate return tax of all profit companies of the consolidated group times the consolidated federal income tax liability in accordance with the provision ITR 55(2). Of the total deficiency set out above the following amounts resulted from the Collector's adjustment to allocate consolidated federal income tax:

1957 $241.24
1958 696.84
1959 239.16

"10. Petitioner is the only member of the consolidated group which has income from sources within Louisiana.
*677 "11. Trunkline Gas Company has paid, for application on the group federal income tax liability in each of the years in dispute, the amount set forth in paragraph 7 hereof.
"12. The Federal Power Commission and Securities Exchange Commission accept as Trunkline's Federal Income Tax liability its computations on a separate return basis. Also, Trunkline's reports to its stockholders and bondholders show Federal tax liability as computed on a separate return basis.
"13. Other corporations deriving income from sources within Louisiana and which join their parent corporation in filing a consolidated Federal Income Tax return, have consistently complied with Louisiana's ITR 55.2."
Among the several income tax provisions of our law that we have before us for applicable and interpretation in this case are R.S. 47:55 and R.S. 47:241 and ITR 55.2. The trial court held with respect to these two statutes and the regulations that there was a conflict between R.S. 47:55 and 47:241 relative to the deduction of federal income tax in the computation of net income for income tax purposes allowable to nonresident corporations doing business in Louisiana, and that because of this conflict ITR 55.2 is illegal and unenforceable. These statutes provide:
 "R.S. 47:55. Deductions from gross
 income; taxes generally
In computing net income, there shall be allowed as deductions all taxes paid or accrued within the taxable year except: [The excepts have no application to this case.]
 "R.S. 47:241. Net income subject to
 tax
"The net income of a nonresident individual or foreign corporation subject to the tax imposed by this Chapter shall be the sum of the net allocable income earned within or derived from sources within this state, as defined in R.S. 47:243, and the net apportionable income derived from sources in this state, as defined in R.S. 47:244, less the amount of federal income taxes attributable to the net allocable income and net apportionable income derived from sources in this state. The amount of federal income taxes to be so deducted shall be that portion of the total federal income tax which is levied with respect to the particular income derived from sources in this state to be computed in accordance with rules and regulations of the collector of revenue. Proper adjustment shall be made for the actual tax rates applying to different classes of income and for all differences in the computation of net income for purposes of federal income taxation as compared to the computation of net income under this Chapter. Where the allocation of the tax is to be based on a ratio of the amount of net income from sources in Louisiana to the amount of total net income of a particular class, both the numerator and the denominator of the fraction used in determining the ratio shall be computed on the basis that such net income is determined for federal income tax purposes. As amended Acts 1950, No. 445, § 1.
While we fail to find in the record an offering of ITR 55.2, we believe there is no dispute between the plaintiff and defendant that the regulation as cited in the Collector's brief is correctly stated to be:
"Where a corporation includes its net income in a consolidated Federal income tax return, the portion of the total consolidated tax attributable to such corporation shall be determined by allocating the tax of the consolidated group to the several members of the group on the basis of the percentage of the total tax which the tax of such member, as computed on a separate return, would bear to the total amount of taxes for all members of the group so computed. The Federal *678 income tax on any corporation, calculated by applying the foregoing rule cannot, under any circumstances, exceed the amount paid by such corporation. For this purpose, the amount of Federal income tax paid by a corporation shall be deemed to be the sum of payments it makes to the Federal Government and payments it makes to any other corporation of the consolidated group in discharge of the tax obligation arising from the consolidation, minus the sum of any payments it receives from the Federal Government and the sum of any payments it receives from any other corporation in the consolidated group in discharge of the tax obligation arising from the consolidation."
The contention of the Collector is that:
1. There is no conflict between R.S. 47:55 and R.S. 47:241;
2. The calculation of a separate federal tax return is not payment of federal income taxes within the meaning of the above two statutes; and
3. The federal income tax deduction allowed on Louisiana income to nonresident foreign corporations is an equitable pro rata share of the consolidated federal income tax paid.
The position of Trunkline, on the other hand, is that:
1. Trunkline Gas Company did actually pay the amount of federal income tax for which it claims deduction; and
2. ITR 55.2 is not in accord with the provisions of R.S. 47:241, et seq., relating to the determination of net income of foreign corporations having Louisiana income.
As we see and appreciate the issue before us, it is this: Is Trunkline, in computing its net income earned within or derived from sources within this state, entitled to take credit for the amount of federal income taxes attributable to the net allocable income and net apportionable income derived from sources in this state, or must Trunkline, in so computing such net income, comply with the provisions of ITR 55.2, dealing with a corporation whose net income is included in a consolidated federal income tax return, which provides that credit can be taken in such computation for such portion of the total consolidated tax attributable to Trunkline by allocating the tax of the consolidated group to the several members of the group on the basis of the percentage of the total tax which the tax of Trunkline as computed on a separate return would bear to the total amount of taxes for all members of the group so computed.
In consideration of any possible conflict between R.S. 47:55 and R.S. 47:241, we find in the case of Collector of Revenue v. Hunt (1964) 246 La. 605, 165 So.2d 843, the Supreme Court passed on this question, although the issue was different from that presented in instant case. In this case, the court said on page 610 of 246 La., on page 845 of 165 So.2d that:
"Section 55 [referring to R.S. 47:55 (4)] prohibits the deduction of income taxes paid on net income on which no Louisiana income tax has been paid or will be paid. Moreover, Section 241 provides that the amount of federal income tax to be deducted shall be that portion of the total federal tax `which is levied with respect to the particular income derived from sources in this state.' Hence, the law is clear that the deductible federal income tax is that paid on state-taxed income."
On rehearing, the court stated on page 623:
"* * * Hence, the Louisiana Collector of Revenue was correct * * * in employing LSA-R.S. 47:55(4) and LSA-R.S. 47:241 to complement each other."
In commenting on the allocation of the federal income tax by the Collector as being harsh and inequitable because it results in *679 assigning a disproportionate share of the federal tax to the income realized outside the State of Louisiana, the court said on page 612, 165 So.2d on page 845:
"[2] * * * However, we are here concerned with a deduction of the federal income tax paid by the taxpayers. Such a deduction is a matter of legislative grace. Its allowance turns on whether it meets the statutory test, rather than on general equitable considerations. * * *."
Inasmuch as the granting of the right to make deductions of federal income tax paid by the taxpayer is a legislative grace, the legislature, and by delegation of authority, the Collector of Revenue, may impose such conditions thereon as are reasonable and apply equally to all entities coming under the purview of its regulations.
In analyzing R.S. 47:241, we find that it provides that the net income of nonresident individuals or foreign corporations shall be the sum of the net allocable income and the net apportionable income, less the amount of federal income tax attributable to these two defined sources of income. In the same section and in the next sentence thereof, it is stated that the amount of the federal income tax to be so deducted, that is deducted as provided above, shall be that portion of the total federal income tax to be computed in accordance with rules and regulations of the collector of revenue.
Trunkline argues that what is to be computed "in accordance with rules and regulations of the Collector of Revenue" is the particular income derived from sources in this state." This is not the interpretation that we find is applicable. The "particular income derived from sources in this State" has already been designated as net allocable income and net apportionable income which is defined by R.S. 47:242(1) and (2).
It is clear to us that the legislature intended that the collector of revenue would make rules and regulations for computing and determining the amount or portion of federal income tax to be deducted from the defined income derived from sources in this state.
ITR 55.2 is the regulation of the Collector of Revenue which governs the computation of that portion of the federal income tax that is to be deducted from that certain defined income derived from sources in this state in computing net income of a corporation whose net income is included in a consolidated federal income tax return.
We find, and so hold, that the payment by the parent company, Panhandle Eastern Pipe Line Company, of federal income taxes on a consolidated return which accounts for and includes net income of some affiliates, including Trunkline Gas Company, as well as operating losses of other affiliates, all wholly owned by the parent company, is not payment in fact of federal income taxes within the contemplation and intendment of LSA-R.S. 47:55, 47:241 as to entitle Trunkline Gas Company to full credit deduction of the federal income tax attributable to Louisiana derived income which it computes to be due the federal government as though it were paying this tax on the basis of a separate tax return. On this premise, it conclusively appears to us that the manner of allocating the portion of federal income tax to which Trunkline is entitled to deduct in arriving at net income produced from the designated Louisiana sources as prescribed by ITR 55.2 results in a credit of an equitable pro rata share of the consolidated federal income tax paid.
A similar situation existed in the case of Buick Motor Co. v. City of Milwaukee, Wisconsin, (1931) 7 Cir., 48 F.2d 801. While the background facts are dissimilar, the principle of apportioning to certain state derived income a proportionate share of the entire federal income tax paid on a consolidated tax return by the parent corporation is the same, and gives us direction in the instant case.
*680 Therein the court said on page 805:
"[9, 10] Appellant insists that, in any event, it is entitled to such a deduction from the ascertained income as would be the equivalent of such a federal income tax as would have been required to be paid by an independent jobber or dealer who had earned on Wisconsin business the same income which was found to have been earned by appellant for the years in question. Appellant contends that an independent dealer who had earned this income would have been required to pay federal tax very much larger than the federal taxes which in fact the commission did deduct from income.
"The commission dealt with the federal income tax feature by apportioning to the Wisconsin income a proportionate share of the entire federal income tax which was paid for the respective years by General Motors, whose returns to the federal government included the profits of all its subsidiaries, including appellant. The apportionment made by the commission is not attacked, but the method is questioned. For instance, for the year 1921 the deductible losses of General Motors Company were sufficiently heavy to neutralize its entire profits and it paid no federal income tax for that year; and so for that year the commission made no deduction on account of federal income taxes. To the extent that in other years the income of General Motors was reduced by deductible losses, the proportion of federal income taxes paid attributable to Wisconsin income would be proportionately less, whereas it is contended the profits of an independent dealer transacting the Wisconsin business would not likely have been subject to such reduction.
"Of course we cannot know what deductions from income an independent dealer would have been entitled to make. There are many contingencies which could not have been anticipated. Once it is determined what income was taxable to appellant, the tax will not be defeated by embarrassments in the way of determining what deductions from income the taxpayer might have been entitled to have had allowed.
"If the practice was, as it seems to have been, to determine the federal income tax upon a consolidated return by General Motors and all its subsidiaries, we cannot see that the state was derelict in its duty or unfair toward appellant in deducting from Wisconsin income, for purposes of the state income tax, such a proportion of federal income taxes paid by the parent company as would be attributable to Wisconsin income. If none were paid, then none would be deductible. The gross amount so deducted by the commission for federal taxes paid by General Motors, and attributable to Wisconsin income, during the period in question, was $422,237.82, and we find no substantial ground for complaint in the contention that the deduction should have been made.
"Under the circumstances appellant is not in position to complain of the method adopted, particularly as the record makes no disclosure of a definite plan which is more fair."
We find, and so hold, that Trunkline has not paid any federal income tax during the years in question. All that can be said of Trunkline's procedure is that it reported to its parent company, Panhandle Eastern Pipe Line Company, certain data which was the same as that required in computing income taxes, and the parent company required this information or data from all of its subsidiaries. It also required of Trunkline that it send, along with this factual income data, a check in an amount equal to what its income tax would have been had it in fact filed an income tax return. As we understand the operation of this complex organization, the parent company has no separate *681 operation of its own, but operates entirely through subsidiaries wholly owned by it.
Trunkline argues that Trunkline paid the tax, and as proof of such payment it shows that a check in payment of such federal income tax is sent to the parent company along with the income tax data payable to either the parent company or to the Internal Revenue Service, and that it receives no rebate from Panhandle Eastern Pipe Line Company. If the allowance of all or any portion of federal income tax as a deduction in computing net income is a legislative grace, and we do so hold under the authority of Collector of Revenue v. Hunt, supra, it actually matters not whether Trunkline paid the tax because Trunkline comes under the purview of ITR 55.2 in its participation in the filing of a consolidated federal income tax return under the provisions of U.S.C.A. 26:1501, et seq. Chapter 6Consolidated Returns. As long as the Collector applied the regulation equally to all such foreign corporations whose income was reported on a consolidated return. No claim of discrimination between entities of the same class is raised by Trunkline.
We find that the provisions of R. S. 47:55 and R.S. 47:241 do not conflict because R.S. 47:55 is a general provision of the statute on computation of net income, and R.S. 47:241 deals specifically with the net income of nonresident individuals and foreign corporations subject to payment of Louisiana income tax.
Trunkline cites the case of Cities Service Gas Company, et al v. Federal Power Commission, (1964) 10 Cir., 337 F.2d 97, as decisive of the question of whether Trunkline had actually paid the amount of federal income tax it claimed as a deduction on the Louisiana income tax return. In the cited case, the Federal Power Commission had not allowed Cities Service Gas Company to include in its cost of service for the determination of its jurisdictional rates federal income taxes computed on its earnings because it had joined its parent, Cities Service Company, in a consolidated federal income tax return. The Federal Power Commission had ruled that the gas company was entitled only to a federal income tax expense computed and based upon an allocated portion of the federal income tax of the entire group just as the Collector is contending for in the instant case.
The court required the Commission to accept as a cost of service in rate determination full credit for the federal income taxes computed on its earning, rather than its proportionate share of the federal taxes due under the consolidated tax return.
This cited case is the result of an appeal from a rate fixing agency over which the federal courts exercise jurisdiction. There is no question involving tax computation and the analogy is not appropriate between the factors to be taken into consideration in establishing rates and the allowance of credit for federal income tax computed for preparation of the consolidated federal income tax return of affiliated companies by a parent organization.
Trunkline states in its brief that it does not contend that R.S. 47:55 and R.S. 47:241 are in conflict. However, the trial court did so hold. Trunkline does contend that the regulation promulgated by the Collector as ITR 55.2 is in conflict with the provisions of R.S. 47:241, which it says "clearly states what income is to be used by a foreign corporation in calculating the amount of federal income tax to be deducted."
R.S. 47:241 does provide for the computation of net income and the section defines the sources of such income, however, that is not all that this section provides. It provides that "The amount of federal income taxes to be so deducted shall be that portion of the total federal income tax which is levied with respect to the particular income derived from sources in this state to be computed in accordance with rules and regulations of the collector of revenue. * * *."
ITR 55.2 are those rules and regulations of the collector of revenue as provided for in section 241, supra.
*682 For the foregoing reasons we conclude that Trunkline must comply with the provisions of ITR 55.2 which provides the manner of computing the federal income tax that is deductible in arriving at net income for Louisiana income tax purposes.
Accordingly, the judgment of the district court is reversed.
Reversed.