No. 45,554

CITIES SERVICE GAS COMPANY, a Corporation, and CITIES SERVICE COMPANY, a Corporation, Appellees, v. JAMES T. MCDONALD, Director of Revenue for the State of Kansas, *Appellant.*

(466 P. 2d 277)

Opinion filed March 7, 1970.

*O. F. Baldwin,* attorney for the Department of Revenue, argued the cause, and *William L. Harris, Jr.,* of the Department of Revenue, was with him on the brief for the appellant.

*George E. Peabody,* of Oklahoma City, Oklahoma, and *Ellis D. Bever,* of Wichita, argued the cause, and *Jack W. Wertz, Conrad C. Mount,* and *Charles V. Wheeler,* of Oklahoma City, Oklahoma, and *William M. Cobb,* of Wichita, were with them on the brief for the appellees.

The opinion of the court was delivered by

O'CONNOR, J.: The director of revenue has appealed from a judgment of the district court of Sedgwick county abating and setting aside an order of the Board of Tax Appeals sustaining an assessment against Cities Service Gas Company (hereinafter referred to as Gas Company) for additional corporate state income tax for the year 1958 in the amount of $128,462.67, plus interest. The additional assessment came about because of the director's disallowance

of a federal income tax deduction of $6,367,534 claimed on Gas Company's 1958 Kansas return.

The over-all question is whether Gas Company, in computing its net income for the year in question, was entitled to take a deduction for federal income tax paid, accrued or incurred, based on its computation of what the company owed the federal government on a separate-return basis when, in fact, it joined with other wholly owned subsidiaries of the parent company, Cities Service Company, in the filing of a consolidated federal income tax return showing no tax due.

Under applicable provisions of the internal revenue code, all corporations whose voting stock is owned 80% or more by a parent company must join in the filing of a consolidated federal income tax return. When a consolidated return is filed, a separate return must be prepared for each company. The separate returns are transmitted to the Internal Revenue Service, together with the consolidated return in which the losses of any company, or companies, in the consolidation are offset against the taxable income of other companies in the group. In addition, losses can be carried back for three years or carried forward for five years, and can be offset against taxable income for those years.

A résumé of the factual background to this controversy will focus the decisive issue before us.

Gas Company is engaged in the *unitary gas pipeline business* of purchasing, transporting and selling natural gas. It purchases gas in Texas, Oklahoma and Kansas, and transmits it by means of a continuous, interconnected network of pipelines for marketing in Texas, Oklahoma, Kansas, Missouri, and Nebraska. Since its organization in 1922, and until August 1, 1963, the company was directly or indirectly a wholly owned subsidiary of Cities Service Company. In addition, the parent company was also the 100% owner of 34 other subsidiary corporations which are engaged in the *unitary petroleum business.*

For the year 1958 Gas Company prepared its individual corporate federal income tax return, reflecting net income of $12,256,412 from its five-state *unitary gas pipeline business* and federal income tax due thereon of $6,367,534. This return was forwarded by Gas Company to the parent, Cities Service Company, along with Gas Company's four separate checks totaling $6,367,534, payable to the parent company. Each check was accompanied by a voucher

stating, in essence, that the check was in payment of an install-ment of Gas Company's federal income tax for the calendar year 1958.

In similar fashion the 34 other subsidiaries engaged in the *unitary petroleum business* also prepared and delivered to the parent company their 1958 federal income tax returns on a separate-return basis. Those subsidiaries showing a profit on their individual returns paid the parent company a total of $10,415,212 for federal income taxes, as reflected in their separate returns, thus making a grand total of $16,782,746 received by the parent from all its profit subsidiaries, including Gas Company. These payments were exactly equal to the amount the subsidiaries would have paid to the federal government had their federal income tax returns been filed independent of the consolidated return.

After receiving the individual federal income tax returns from each of its subsidiaries, the Cities Service Company prepared a consolidated federal return to which was attached the separate returns of the subsidiary corporations. Gas Company's net income of $12,-256,412 was reported to the federal government and was included in the consolidated return.

Exclusive of the profit shown by Gas Company from its unitary gas pipeline business, the *unitary petroleum business* conducted by Cities Service Company through its 34 subsidiary corporations sustained a net loss for the year 1958 in the amount of $19,401,983. Under provisions of the internal revenue code, the *unitary petroleum business* was entitled to carry back the net loss to the year 1955 and offset it against net taxable income for that year of $23,-286,129 on which it had paid the federal government $12,533,020 in taxes. By reason of the net loss sustained in 1958, the *unitary petroluem business* would have been entitled to a refund of $10,-224,666 on the tax it had paid in 1955. But, because of the inclusion of Gas Company's 1958 taxable income in the 1958 consolidated return, the refund received by the *unitary petroleum business* from the federal government was reduced by $6,367,534 (the exact amount of tax payable upon Gas Company's taxable income), to $3,857,132.

Under established accounting procedures used by Cities Service Company and its subsidiaries, the $3,857,132 refund received by the parent company in 1958 from the federal government, plus the $16,782,746 received by the parent company in 1958 from its

*profit subsidiaries* (including Gas Company), was paid by the parent company to those subsidiaries reporting losses in 1958. Thus, the sum, totaling $20,639,878, was not retained by the parent company but was paid to the *loss subsidiaries* on the theory their losses had been utilized on the consolidated return and had thereby reduced the tax that would otherwise have been due. Gas Company, having had taxable income for the year in question, received no portion of the $20,639,878 distributed by Cities Service Company to its loss subsidiaries.

There was undisputed testimony in district court by the retired senior vice president of Cities Service Company that the method of accounting employed by the companies in allocating federal income tax liability on a consolidated-return basis had been recognized and approved by the Internal Revenue Service for many years. (See § 1552 Int. Rev. Code of 1954, 26 U. S. C. A. § 1552.) This particular method contemplates compensating payments to loss subsidiaries for the benefits derived from the use of their operating losses in the consolidated return and is an accepted accounting procedure.

Gas Company has been filing Kansas income tax returns each year since the Kansas Income Tax Act was enacted in 1933. On its Kansas return for 1958 Gas Company reported net income from its five-state operation as $12,256,412 (the same as shown on the federal return), and claimed as a deduction for federal income tax paid the amount of $6,367,534. Under the allocation formula as provided in G. S. 1949, 79-3218, Gas Company allocated 57.-55187% of its five-state net income to the State of Kansas. As reflected by the Kansas return, Gas Company owed tax to the State of Kansas of $121,714.85, which it paid.

There was evidence that in each year where permitted by federal law Gas Company joined in the filing of a consolidated federal income tax return, and it had reported its tax to the State of Kansas and made its claim for federal income tax deduction in the same manner as in the year 1958. Over the years no question was ever raised by the director regarding the method followed by Gas Company in computing the amount of its deduction. For that matter, Gas Company had no knowledge that the director was going to view the matter any differently than in prior years until receipt of his assessment letter of March 1963 with the notation, "Information available indicates no Federal income tax liability,

and the entire Federal income tax deduction is disallowed." The director's action was not the result of a specific regulation being promulgated by him pertaining to the amount of federal income tax that could be deducted on a Kansas return where the corporate taxpayer included its net income in a consolidated return; rather, it was prompted by a member of the director's staff who had read an article in a financial publication about Cities Service Company receiving a large federal refund for the tax year 1958.

The district court, in its memorandum decision, found that as a result of the accounting procedure utilized in this case, no gain resulted to the parent, Cities Service Company, from Gas Company's payment of $6,367,534, and Gas Company was poorer to the extent of its liability in that amount. Furthermore, there was no tax saving to Gas Company because of its taxable income and the tax thereon having been reported on the consolidated return. The court concluded that Gas Company did incur, and pay, federal income tax for the year 1958 in the amount of $6,367,534, and that the director's disallowance of Gas Company's claimed deduction was erroneous.

Under the provisions of the Kansas Income Tax Act in effect for 1958 (G. S. 1957 Supp., 79-3203[b]), corporations were required to pay an annual tax on their entire net income derived from property located and business transacted within the state during the taxable year. G. S. 1957 Supp. 79-3206 (a) (3) allowed a deduction for federal income taxes paid during the year. G. S. 1949, 79-3202 read:

"(8) The word 'paid' means 'paid or incurred' or 'paid or accrued' and shall be construed in accordance with the method of accounting used as a basis for computing net income under this act."

The director's position, as stated in his brief, is that a subsidiary corporation joining in the filing of a consolidated federal income tax return is entitled to a deduction for the payment of federal income tax on its state return for the amount of its *proportionate share* of the tax paid to the federal government. Consequently, if no tax is paid on the consolidated return, a subsidiary company is not entitled to a federal income tax deduction on its Kansas income tax return.

In support of his interpretation the director relies heavily on *Trunkline Gas Company v. Collector of Revenue* (La. App. 1965),

182 So. 2d 674, which is factually similar to the instant case. The Louisiana statute, R. S. 47:241, read, in part:

". . . The amount of federal income taxes to be so deducted shall be that portion of the total federal income tax which is levied with respect to the particular income derived from sources in this state to be computed in accordance with rules and regulations of the collector of revenue. . . ."

Pursuant to the statute the collector of revenue of the state of Louisiana promulgated a regulation (ITR 55.2), the pertinent portion of which stated:

"Where a corporation includes its net income in a consolidated Federal income tax return, the portion of the total consolidated tax attributable to such corporation shall be determined by allocating the tax of the consolidated group to the several members of the group on the basis of the percentage of the total tax which the tax of such member, as computed on a separate return, would bear to the total amount of taxes for all members of the group so computed. . . ." (*Trunkline Gas Company v. Collector of Revenue,* supra, p. 677.)

In *Trunkline,* as here, the subsidiary taxpayer contended that in computing its net income it was entitled to a full credit deduction for the amount of federal income tax it owed to the federal government on the basis of its separate income tax return. The collector, however, in computing the amount of federal income tax to be allowed as a deduction on the Louisiana income tax return for each of the years in question, allocated the consolidated federal income tax liability among members of the group on the basis of the ratio of the taxpayer's federal net income tax on a separate-return basis to the total separate-return tax of all *profit* companies of the consolidated group, in accordance with the provisions of the collector's regulation ITR 55.2.

The court, in upholding the collector's position, said:

"We find, and so hold, that the payment by the parent company, Panhandle Eastern Pipe Line Company, of federal income taxes on a consolidated return which accounts for and includes net income of some affiliates, including Trunkline Gas Company, as well as operating losses of other affiliates, all wholly owned by the parent company, is not payment in fact of federal income taxes within the contemplation and intendment of LSA-R. S. 47:55, 47:241 as to entitle Trunkline Gas Company to full credit deduction of the federal income tax attributable to Louisiana derived income which it computes to be due the federal government as though it were paying this tax on the basis of a separate tax return. On this premise, it conclusively appears to us that the manner of allocating the portion of federal income tax to which Trunkline is entitled to deduct in arriving at net income produced from the designated

Louisiana sources as prescribed by ITR 55.2 results in a credit of an equitable pro rata share of the consolidated federal income tax paid." (p. 679.)

We believe *Trunkline* is distinguishable from the case at hand, for there the decision turned on whether the collector's regulation which furnished the basis for computing the amount of federal income tax allowable as a deduction was authorized by the statute. As previously indicated, the Kansas director of revenue had not seen fit to promulgate a specific regulation providing the amount a corporate taxpayer could deduct on its Kansas return for federal income tax where the taxpayer had joined in the filing of a consolidated federal income tax return.

Both the director and Gas Company rely on our recent decision in *Northern Natural Gas Producing Co. v. McCoy*, 197 Kan. 740, 421 P. 2d 190, to support their respective positions. A review of the facts in that case is in order. The taxpayer corporation was a wholly owned subsidiary of Northern Natural Gas Company. The subsidiary, like Gas Company here, was a multi-state business with its net income, for federal income tax purposes, having been incurred from the multi-state operations. Due to the nature of its business the taxpayer was required to file on a direct accounting method in reporting its income to the State of Kansas, and under such method of accounting its taxable income earned in Kansas for 1960 was in excess of $4,000,000. The consolidated federal tax return of Northern and its subsidiaries disclosed that because of losses sustained in taxpayer's multi-state operations outside the state of Kansas it had a net federal taxable income of $221,207.35, and taxpayer had paid to its parent company, Northern, the sum of $109,527.82 as its share of the 1960 federal income tax. Instead of claiming only the amount actually paid to the parent company, the taxpayer, on its Kansas return, claimed a deduction for federal income tax in excess of $2,000,000, being the amount taxpayer would have been required to pay had its operations been solely within the state of Kansas. The judgment of the district court sustaining the disallowance of the claimed deduction was affirmed by this court in the following language:

". . . We are of the opinion the words 'paid or incurred' and 'paid or accrued' . . . [as used in G. S. 1949, 79-3202 (8)] have reference only to the amount of federal income tax *actually paid* by the taxpayer during the taxable year, and conclude the director of revenue and the Board of Tax Appeals did not err in allowing the appellant [only] the sum of $109,527.82

as a federal income tax deduction in computing its 1960 Kansas income tax liability." (Emphasis added.) (p. 746.)

The director views the *Northern* decision as saying a taxpayer filing a consolidated return with a group of other corporations may, for Kansas income tax purposes, claim as a deduction only its proportionate share of the consolidated federal tax liability, if there be one. Gas Company, on the other hand, looks on the case, and we believe rightly so, as holding that the subsidiary is authorized to deduct its federal income tax liability incurred on a separate-return basis and actually paid to its parent.

The director does not seriously dispute Gas Company's suggestion that even though it was required by the Internal Revenue Service to be joined in the consolidated federal income tax return for 1958, there was nothing in the internal revenue code which would have prevented it from making its checks for federal income taxes payable to the Internal Revenue Service instead of to the parent company, in which case the parent would have forwarded the checks to the District Director of Internal Revenue. Although this procedure would have required the parent to file a claim for refund, Gas Company would have satisfied its federal income tax liability in that way, and there would be no question of payment of the tax as far as Kansas was concerned. The accounting method followed by Cities Service Company, however, avoided this awkward procedure.

Gas Company's 1958 federal income tax liability ($6,367,534) was paid by checks made payable to the parent. The inclusion of Gas Company's income in the consolidated return necessarily reflected its tax liability and resulted in the unitary petroleum business receiving a lesser refund than that to which it would have otherwise been entitled—the reduction being the same amount of Gas Company's tax liability. In actuality, said liability was satisfied by the reduction of the parent's refund. We believe the fact Gas Company's checks were made payable to Cities Service Company instead of to the Internal Revenue Service is wholly insignificant, for in either case the end result was the same.

Our attention has also been directed to *Cities Service Gas Company v. Federal Power Commission*, 337 F. 2d 97 (10th Cir. 1964), where the Circuit Court of Appeals was called upon to determine the amount of federal income tax Gas Company should be allowed as a cost of service for rate-making purposes. The Federal Power

Commission had determined an average tax allowance by applying a formula which reflected the so-called "tax savings" effected by the filing of consolidated returns for the years 1957, 1958 and 1959. Gas Company challenged the power commission's order, contending the company was entitled as a part of cost of service a tax allowance based upon the statutory corporate income tax rate of 52% applied to the agreed taxable income of the Gas Company for the test year 1958—in other words, the $6,367,534 paid by Gas Company to the parent, Cities Service Company. The court held the commission's order was unauthorized because the commission was without authority in determining just and reasonable rates for jurisdictional gas sales to take into account losses of *nonregulated* and unrelated affiliates in calculating tax allowance includible in the cost of service of a *regulated* company, such as Gas Company.

While the case can scarcely be regarded as controlling precedent for disposition of the question here, we find persuasive language in the opinion tending to support Gas Company's contention that it incurred and paid federal income tax in the amount of $6,367,534:

"We think it is legally fallacious to calculate the Gas Company's tax allowance on the basis of the consolidated tax liability of the parent Company. This approach cannot be justified by the actualities of the case. The uncontroverted facts show that the Gas Company not only incurred a tax liability during the representative years at the statutory 52 percent rate, but its tax liability at that rate was reported to the parent Company, and the consolidated returns actually reflect that tax liability.

". . . in both 1958 and 1959 the inclusion of the Gas Company in the consolidated returns directly affected the consolidated tax liability in the amount of 52 percent of the Gas Company's taxable income, notwithstanding the fact that in those years the other Cities Service affiliates had aggregate tax losses. Application of the loss carry-back provisions of the Internal Revenue Code permit the offsetting of these losses against the taxable income of these affiliates in 1955 and 1956, thereby resulting in tax refunds. No reduction in the actual total tax liability was thus effected since the net effect of the inclusion of the Gas Company in the 1958 and 1959 consolidated returns was to reduce the refund by 52 percent of the Gas Company's taxable income. . . ." (p. 100.)

The director also urges that a payment for federal income tax by a subsidiary to its parent in excess of an amount reasonably allocated to that subsidiary as its share of the consolidated tax liability, or a payment to the parent where there is no federal tax due from the consolidated group, is not a payment of federal income tax but

is in the nature of a *dividend* paid by the subsidiary to the parent. As applied to the factual situation here, we cannot agree.

The parent company (Cities Service Company) did not retain the monies received from the subsidiary (Gas Company) but, instead, distributed them, along with monies received from other profit subsidiaries, in accordance with accepted accounting procedures to those subsidiaries whose losses had been utilized in the consolidated return. Distinguishable are the cases relied on by the director, *Beneficial Corporation*, 18 T. C. 396, and *Alliegro v. Pan American Bank of Miami* (Fla. App. 1962), 136 So. 2d 656, wherein the payments by the subsidiary to the parent were retained by the parent, or set aside in a reserve, for the purpose of paying future tax liabilities and were held to constitute dividends to the parent.

Under the procedure followed here, the parent company acted simply as a clearing house in collecting tax monies from those of its subsidiaries having taxable income and in refunding and paying out to its loss subsidiaries the amounts to which they were entitled by reason of their loss credits having been utilized in the consolidated return. No gain actually resulted to the parent. Just the same, a tax liability was incurred and paid by Gas Company. Its tax liability was reported and paid to the parent company, and the consolidated return reflected that tax liability in the same amount as had an individual return been filed. As already pointed out, there was no tax saving to either the parent or Gas Company as a result of Gas Company being included in the consolidated return.

We hold that under the facts presented, Gas Company actually incurred and paid federal income tax in the amount of $6,367,534 and was entitled to claim said sum as a deduction in computing its net income for the year 1958 on its Kansas income tax return.

The judgment of the district court is affirmed.