604 P.2d 1139

**ARIZONA DEPARTMENT OF REVENUE, Appellant,**

v.

**TRANSAMERICA TITLE INSURANCE COMPANY, a California Corporation; Transamerica Title Insurance Company of Arizona, an Arizona Corporation; and Transamerica Real Estate Tax Services, a California Corporation, Appellees.**

**No. 1 CA–CIV 3832.**

Court of Appeals of Arizona, Division 1, Department A.

March 15, 1979.

Rehearing Denied April 16, 1979.

Review Granted May 1, 1979.

Bruce E. Babbitt, Former Atty. Gen., John A. LaSota, Jr., Atty. Gen. by Frank L. Migray, Asst. Atty. Gen., Phoenix, for appellant.

Lewis & Roca by John P. Frank, David R. Frazer and John C. Mason, Phoenix, for appellees.

HAIRE, Judge.

The issues raised on this appeal relate to the propriety of certain federal income tax deductions taken by the appellee corporations on their state income tax returns for the years 1969 through 1972.

The appellees are subsidiaries of Transamerica Corporation within the meaning of federal income tax law. For the years in question, and for many years prior thereto, Transamerica Corporation and all of its subsidiaries (approximately 200 in number) had filed with the federal government a consolidated federal income tax return pursuant to 26 U.S.C. §§ 1501–4. At the end of every calendar year, each subsidiary would prepare a separate federal income tax return calculating its own taxable income, and then apply the appropriate federal tax rate so as to arrive at the amount of federal tax that would have been payable to the federal government under a separate corporate return. The subsidiary would then forward this separately prepared federal tax return to the parent, Transamerica Corporation, along with a check payable to the parent in an amount equal to the federal income tax as calculated on the separate corporate return. Based upon the information derived from the various separate returns, the parent corporation would then prepare a consolidated return, calculate the amount of tax due on the consolidated return, and pay that amount to the federal government.

The amount of tax paid to the federal government by the parent corporation would not necessarily be equal to the sum of the amounts forwarded to the parent by the individual subsidiaries. One of the advantages inherent in the utilization of the consolidated return is that it permits the parent corporation to adjust the total income of the corporate family by immediately offsetting the losses sustained during the year by some members of the group against the gains or profits made during the same year by other members of the group. Because of this adjustment of profits and losses, the total tax actually paid by Transamerica Corporation to the federal government during each of the years here in question was considerably less than the aggregate amount of the payments that the subsidiaries had sent to Transamerica along with their separate federal tax returns. It was this difference between the amounts sent to the parent corporation by the subsidiaries, and the lesser amount actually paid by the parent to the federal government, that gave rise to the issues involved in this appeal.

A.R.S. § 43–123(c) during the years in question provided as follows:

"In computing net income [for state income tax purposes] there shall be allowed as a deduction taxes . . . paid or accrued during the taxable year. . . "

Based upon this statutory provision the appellee corporations had always claimed as a deduction on their Arizona income tax returns [1] the full amount of the payment sent with their separate federal tax returns to the parent corporation. This practice by the appellee corporations was first questioned by the Department of Revenue in 1974 when it audited the appellees' state tax returns for the years 1969 through 1972. The Department of Revenue contended that the appellee corporations were not entitled to claim the full amount of the payment made to the parent corporation as "taxes . . . paid or accrued". It was the department's position that the appellees' federal income tax deduction should be limited

---

1. The subsidiary corporations with Arizona source income did not file a consolidated Arizona state income tax return. Rather, each subsidiary with Arizona income filed a separate Arizona income tax return.

to a pro rata portion of the tax that was actually paid by the parent to the federal government based upon the consolidated return. Specifically, the Department contends that each appellee's share of the federal tax deduction should be computed by apportioning the total federal consolidated income tax paid by the parent corporation for each year to each appellee in the ratio that each appellee's Arizona source of taxable income bears to the total taxable income of the profitable members of the group for that year.[2]

Applying the above rationale, the Department of Revenue disallowed the method utilized by appellees in computing their federal tax deductions, and issued deficiency assessments against them for the years 1969 through 1972. After an appropriate appeal was made to the Board of Tax Appeals, the board affirmed the assessments, and thereupon appellees brought this action in the Maricopa County Superior Court pursuant to A.R.S. § 43–177(g).

In their complaint filed in the superior court the appellees urged that the deductions challenged by the Department of Revenue were properly taken as "taxes paid or accrued" and alternatively that, in any event, the deductions should have been allowed as ordinary and necessary business expenses.[3] After an evidentiary hearing, the trial court held that the appellees were entitled to the deductions claimed and that the assessments were invalid. The Department of Revenue then appealed to this Court.

The Department of Revenue frames its first question on appeal as follows:

"May a corporation that joins in the filing of a consolidated federal income tax return, base its deduction for federal income taxes on its Arizona return on the amount it would have paid to the federal government had it not joined in the filing of a consolidated federal return?"

■ As we have previously indicated in this opinion, a claim for a federal income tax deduction derives from the provisions in A.R.S. § 43–123(c) allowing a deduction for "taxes . . . paid or accrued during the taxable year . . . ." The Department of Revenue does not dispute that the payments made by appellees to the parent corporation were in fact "paid or accrued" during the taxable years involved. Rather, the Department's contention goes to the classification by appellees of these payments as federal income tax payments. As the Department points out, a "tax" is generally defined as an enforced contribution to the sovereign exacted pursuant to legislative authority, and not as a voluntary payment or donation. See Hunt v. Callaghan, 32 Ariz. 235, 257 P. 648 (1927). While this concept of what constitutes a tax is easily expressed as a general principle, its application to the facts here involved gives rise to considerable difficulty. Appellees have admittedly never actually paid any income taxes directly to the federal government; nor can any specific dollar amount of the taxes paid by the parent corporation be directly traced to, or definitely determined as emanating from, these appellees. Even the Department of Revenue concedes, however, that the appellees were entitled to claim some deduction for the payment or accrual of federal income taxes for the years in question. Since it is clear that no method will determine the proper amount of a deduction with mathematical certainty, the best that can be achieved in this situation is the establishment of some standard to be utilized by the taxing authorities and the taxpayer in arriving at an amount that reasonably comports with the statutory intent.

2. In the tax vernacular, this is known as the "net-to-net method." The computation can be made by placing the taxable income of the subsidiary as the numerator over the taxable income of the profitable members of the group as the denominator, and then applying the fraction thus obtained to the total tax actually paid by the parent corporation on the consolidated return.

3. A.R.S. § 43–123(a)(1)(A) during the years in question provided:

"(a) Expenses

"(1) Trade or business expenses

"(A) In computing net income there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business . . . ."

The appellees, in support of the method used by them in determining the amount of the claimed federal tax deduction for the years in question, rely heavily upon the use of the word "accrued" in the statute, and urge that the standard utilized by the Department in assessing the deficiencies would eliminate the concept of accrual from the law. While we do not entirely agree with the appellees' position in that regard [4] there is some substance to their position that the whole concept of the consolidated return simply adjusts the timing of when the federal government will receive its revenue from the corporate family, and thus to that extent accrual occurs in the year in which the appellees make these payments to the parent corporation.

Appellees urge as authority for the standard used by them a Kansas decision, *Cities Service Gas Co. v. McDonald*, 204 Kan. 705, 466 P.2d 277 (1970). In interpreting a fact situation and statutory provision substantially identical to that involved here, the Kansas court concluded that the entire amount of a payment made by the subsidiary to the parent corporation was deductible. The Kansas court relied heavily upon the Kansas Department of Revenue's failure to promulgate regulations governing the matter. The appellant Department of Revenue contends that the Kansas decision stands alone in this area, and that all other appellate courts that have considered the question have held to the contrary. *See Standard Oil Co. v. State*, 55 Ala.App. 103, 313 So.2d 532, *aff'd mem.* 294 Ala. 770, 313 So.2d 540 (1975); *Trunkline Gas Co. v. Collector of Revenue*, 182 So.2d 674 (La.App. 1965), *aff'd mem.* 248 La. 1101, 184 So.2d 25 (1966); *Northern Natural Gas Co. v. Commissioner of Revenue*, 251 N.W.2d 125 (Minn.1977); *Continental Telephone Co. of Utah v. State Tax Commission*, 539 P.2d 447 (Utah 1975). Were there no factors separate and apart from the literal language of

the statute to guide our decision in this case, we would be inclined toward the adoption of the interpretation urged by the Department of Revenue as constituting an interpretation that more reasonably approaches the intent expressed in A.R.S. § 43–123(c).[5] On the other hand, we cannot say that the practice followed by appellees constituted a completely unreasonable approach and treatment of the subsidiary's federal income tax liability under circumstances involving the utilization of a consolidated return as allowed by federal law.

Expert testimony and the findings of fact entered by the trial court establish that the practice followed by appellees and their parent corporation in the treatment of the federal tax questions here involved was in accordance with generally accepted accounting principles. Appellees had followed this same practice from the first year of filing Arizona returns, from 1961 to 1974, without challenge from the Department of Revenue. The record discloses that although the Department of Revenue began developing its current view about 1968, and had some kind of internal memorandum about 1970, it has never promulgated any regulations as to how consolidated federal returns should be treated for state tax purposes. In fact, no information on the new policy was ever made available to taxpayers except as the Department might assert the position in an audit. The first audit of appellees' returns occurred in 1974, with the resulting assertion of a deficiency relating to the years 1969 through 1972. Appellees urge that under these circumstances, even if the Department's position as to the interpretation of § 43–123(c) is upheld, this Court should not allow the enforcement of that interpretation retrospectively, and should require that the Department of Revenue promulgate appropriate regulations in accordance with the Administrative Procedure Act (A.R.S. §§ 41–1001 *et seq.*).

---

4. As indicated previously in this opinion, we construe the Department of Revenue's position as an attack on the classification of the payment as "federal income taxes" and not as questioning whether the obligation had properly accrued under the accounting system adopted by appellees. ·

5. We do not mean to imply that we reject an alternate theory proposed by appellees to the effect that even if the Department of Revenue's "net-to-net" method of calculation were to be used, appropriate adjustments should be made to give appellees the benefit of foreign tax and investment credit allowances.

As we have indicated in this opinion, because of the interrelationship between the various members of the consolidated group and the fact that the federal income tax is actually computed and paid by the parent corporation, the determination of the specific amount of the federal tax deduction allocable to the subsidiary corporation with Arizona source income becomes difficult. The subsidiary has not actually paid a specific amount that is transmitted to the federal government as the federal tax directly allocable to that subsidiary's net income for the year. The necessity of determining a reasonable method for the allocation of the federal tax liability of the group to the individual subsidiaries within the group is also encountered in circumstances separate and apart from that engendered by the language of § 43–123(c). On the federal level such a determination is necessary in order to arrive at the separate earnings and profits of each member of the affiliated group.[6] Recognizing that there are various methods that the taxpayer might reasonably adopt to determine the amount of the group tax allocable to the subsidiary, the Internal Revenue Service has adopted regulations that permit three different and highly separable specific methods of calculating the federal tax liability attributable to each member of the group, plus a fourth alternative, a general authority to use "any other method selected by the group with the approval of the Commissioner." *See* Treas.Reg. § 1.1552–1 (1954). The method used by the Arizona Department of Revenue in assessing the deficiencies against appellees is in essence identical to the first alternative (the net-to-net method) set forth in the federal regulations.[7]

The Kansas decision urged by appellees in support of the trial court's decision in this matter relied heavily upon the Kansas Department of Revenue's failure to promulgate regulations in this area, stating:

> "We believe *Trunkline* is distinguishable from the case at hand, for there the

decision turned on whether the collector's regulation which furnished the basis for computing the amount of federal income tax allowable as a deduction was authorized by the statute. As previously indicated, the Kansas director of revenue had not seen fit to promulgate a specific regulation providing the amount a corporate taxpayer could deduct on its Kansas return for federal income tax where the taxpayer had joined in the filing of a consolidated federal income tax return." *Cities Service Gas Co., supra,* 204 Kan. at 711, 466 P.2d at 281.

In our opinion the point made by the Kansas court relating to the absence of any regulations is well taken, particularly under the circumstances disclosed in this case. A.R.S. § 43–175(c), at all times in question, provided as follows:

> "The Department *shall* prescribe all rules and regulations necessary for the enforcement of this title." (Emphasis added).

Of course, any such rules and regulations of the nature here suggested could only be adopted by compliance with the Administrative Procedure Act. *See generally* A.R.S. § 41–1001(7). Appellees point out that the Department of Revenue has, in effect, by the development of its policy memo which led to the assessments here involved, attempted to set policy of general applicability without compliance with the Administrative Procedure Act.

■■ We recognize that, within certain limitations, an administrative agency has considerable discretion as to whether it will choose to proceed in making policy by regulation or ad hoc adjudication. However, an agency's formal promulgation of rules and regulations of general application is usually to be favored over the generation of policy in a piecemeal fashion through individual adjudicatory orders. *Arizona Corporation Commission v. Palm Springs Utility Co., Inc.,* 24 Ariz.App. 124, 536 P.2d 245 (1975).

---

**6.** In order to determine profits and losses, the subsidiary must distinguish, for example, between payments made to the parent for expense purposes (i. e., taxes), and that paid for dividend purposes. .

**7.** The method actually used by the appellees has been approved by the Commissioner under the fourth I.R.S. alternative.

*See also Cagle Bros. Trucking Service v. Arizona Corporation Commission,* 96 Ariz. 270, 394 P.2d 203 (1964); *Lee Way Motor Freight Inc. v. Industrial Commission,* 27 Ariz.App. 243, 553 P.2d 1228 (1976). Here the Department had acquiesced for a long period of time in a not unreasonable method employed by the taxpayer to determine the applicable federal tax deduction available under § 43–123(c) in circumstances involving a consolidated federal tax return. As we have indicated above by reference to Internal Revenue Service regulations involving analogous questions, several alternatives have been recognized as constituting reasonable approaches in arriving at a satisfactory solution to this problem. In our opinion we are presented with a classic situation of circumstances requiring that any specific policy adopted by the Department in this area be adopted through the promulgation of rules and regulations.

The judgment is affirmed.

DONOFRIO and FROEB, JJ., concur.