## NORTHERN NATURAL GAS COMPANY v. COMMISSIONER OF REVENUE.

251 N. W. 2d 125.

February 18, 1977—No. 46544.

*Lindquist & Vennum* and *David E. Krause,* for relator.

*Warren Spannaus,* Attorney General, *C. H. Luther,* Deputy Attorney General, and *Arthur J. Glassman,* Special Assistant Attorney General, for respondent.

Heard before Kelly, Todd, and Winton, JJ., and considered and decided by the court en banc.

TODD, JUSTICE.

Northern Natural Gas Company (Northern) filed a consolidated Federal income tax return for the tax years in question. Northern and each of its subsidiaries prepared their own separate tax returns. The subsidiaries forwarded their returns to Northern, together with a check payable to Northern in, an amount equal to the tax due if the subsidiary had filed separately. Some of the subsidiaries incurred losses which had the effect of reducing the overall tax liability on the consolidated tax return. Therefore, the payments received by Northern from its

subsidiaries, when added together, exceeded the amount of actual tax paid by the group on their consolidated return. Northern distributed the "excess payment" to the "loss subsidiaries" in proportion to the amount that each subsidiary's individual loss decreased the group's ultimate tax liability on the consolidated return. On its Minnesota income tax return, Northern claimed its share of the payments made to reimburse the loss subsidiaries for consumption of their individual losses on the consolidated Federal return as a deduction under Minn. St. 1969, § 290.09, subd. 4. This claimed deduction was disallowed by both the commissioner of taxation and the Tax Court. We affirm.

The matter was submitted to the Tax Court accompanied by a stipulation of facts that provided:

"1. On June 9, 1972, the Commissioner issued his Order establishing an additional corporate income tax liability for Northern for the five tax years ending December 31, 1957 through December 31, 1961. On March 23, 1973, the Commissioner issued a second Order denying Northern's claim for a refund of part of the Minnesota income taxes paid by Northern for the same five years.

"2. The sole issue involved in this appeal is what constitutes the proper method of computing the deduction for Federal income taxes allowable under [Minn. St. 1969,] § 290.09, Subd. 4. Northern timely filed a claim for refund for the years in question which claim was denied by the Commissioner.

"3. Northern is a Delaware corporation principally engaged in the business of finding, processing, transporting and selling natural gas in many states, including the State of Minnesota. Northern's principal offices are located at 2223 Dodge Street, Omaha, Nebraska.

"4. During the years in question, Northern was the sole owner of several subsidiary corporations that were engaged in businesses that complemented the operation of Northern.

"5. At the close of each of the years, Northern and each subsidiary calculated their Federal income tax liability on a separate

return basis. Those subsidiaries having Federal taxable income on a separate return basis paid the amount of their Federal tax liability so calculated over to Northern.

"6. During each of the years, Northern prepared and filed a consolidated Federal income tax return covering itself and its subsidiaries for each of the tax years ending December 31, 1957, through December 31, 1961. Due to net operating losses incurred in each of the years other than 1957 by certain of the subsidiaries, a tax savings was effected by reducing the Federal income taxes of Northern's consolidated group.

"7. Northern paid these tax savings to each subsidiary in the consolidated group suffering a loss by paying it an amount equal to the sum that its net operating losses reduced the Federal income tax liability of the consolidated group.

"8. During each of the years in question, Northern's share of Federal income taxes actually paid to the United States by Northern on behalf of the consolidated group plus Northern's share of the payments made by Northern on behalf of the consolidated group to the loss subsidiaries equaled Northern's Federal income tax liability computed on a separate return basis.

"9. Northern's Federal taxable income, computed on a separate return basis, was as follows for each of the tax years in question:

| "1957 | $21,824,798 |
| 1958 | 18,530,041 |
| 1959 | 22,901,030 |
| 1960 | 32,748,004 |
| 1961 | 28,464,673 |

"10. Northern's share of the sums actually paid by Northern within the years in question on behalf of the consolidated group to the loss subsidiaries included in the consolidated return was as follows for each of the years in question:

| "1957 | $ (30,438) |
| 1958 | 1,776,787 |

| | |
|---|---|
| 1959 | 1,689,277 |
| 1960 | 612,520 |
| 1961 | 319,829 |

"11. Northern's share of the amount of Federal income tax which the consolidated group actually paid over to the United States was as follows during each of the years in question:

| | |
|---|---|
| "1957 | $10,999,008 |
| 1958 | 10,919,709 |
| 1959 | 7,710,026 |
| 1960 | 11,241,326 |
| 1961 | 21,428,388 |

For each of the years in question, Northern's share of the Federal income tax actually paid by the consolidated group was calculated by multiplying the total tax payments actually made during the year in question to the United States by the following fraction:

"Northern's Federal taxable income for the year in question computed on a separate return basis
_____

The combined taxable income of the gain companies included in the consolidated group for the year in question.

The Commissioner allowed Northern the sums stated above in this paragraph as deductions under [Minn. St. 1969,] § 290.09, Subd. 4.

"12. Northern claims as a deduction under [Minn. St. 1969,] § 290.09, Subd. 4, for each of the years in question an amount equal to its share of the taxes actually paid by the consolidated group to the United States during the year plus its share of the payments made during the year by the consolidated group to the loss subsidiaries included in the group. If Northern's method of computing the deduction under [Minn. St. 1969,] § 290.09, Subd. 4, is correct, Northern is entitled to refunds or owes additional taxes in the following sums for the tax years in question:

| | |
|---|---|
| "1957 | $ (402) |
| 1958 | 23,336 |

| | |
|---|---|
| 1959 | 28,737 |
| 1960 | 11,085 |
| 1961 | 6,058" |

The Tax Court also received evidence, in the form of expert testimony, that the reimbursement procedure employed by Northern and its subsidiaries met generally accepted accounting practices.

The sole issue for review is whether a Minnesota corporate taxpayer which elects to file a consolidated Federal income tax return can deduct, as "taxes paid" under Minn. St. 1969, § 290.09, subd. 4, its share of amounts distributed, at its own discretion, to "loss subsidiaries" in proportion to the amount that their losses reduced the ultimate Federal tax liability of the consolidated group for the tax years in question.

It is Northern's position that the reimbursements paid to the loss subsidiaries should be considered, for purposes of § 290.09, subd. 4, as "taxes paid" within the taxable years under consideration. This argument is based primarily on the rationale that the reimbursements made to the loss subsidiaries are equivalent to an indirect payment of Federal income taxes and therefore are deductible.

The right of a corporate taxpayer to deduct from its Minnesota income tax return the amount of Federal income taxes paid for the tax years under consideration in this case was governed by § 290.09, which provided in part:[1]

"Subdivision 1. The following deductions from gross income shall be allowed in computing net income, * * *

* * * * *

"Subd. 4. Taxes paid or accrued within the taxable year, except (a) income or franchise taxes imposed by this chapter; (b) taxes assessed against local benefits of a kind deemed in law

---

[1] This statute was amended by Ex. Sess. L. 1971, c. 31, art. 6, § 6, which made Federal income taxes payable by corporations nondeductible in computing Minnesota income tax.

to increase the value of the property assessed; (c) inheritance, gift and estate taxes except as provided in Minnesota Statutes, Section 290.077, Subdivision 4; (d) cigarette and tobacco products excise tax imposed on the consumer; and (e) that part of Minnesota property taxes for which a credit or refund is claimed and allowed under Section 290.0603. Income taxes permitted to be deducted hereunder shall, regardless of the methods of accounting employed, be deductible only in the taxable year in which paid. Taxes imposed upon a shareholder's interest in a corporation which are paid by the corporation without reimbursement from the shareholder shall be deductible only by such corporation."

It is a well-established rule in the law of income taxation that deductions are a matter of legislative grace and therefore statutes that provide for such deductions should be strictly construed. See, Commr. of Int. Rev. v. Nat. Alfalfa Dehydrating & Mill. Co. 417 U. S. 134, 94 S. Ct. 2129, 40 L. ed. 2d 717 (1974) ; Commissioner v. Sullivan, 356 U. S. 27, 78 S. Ct. 512, 2 L. ed. 2d 559 (1958). A necessary corollary of this general rule is that a taxpayer claiming to be entitled to a deduction is required to demonstrate that his claim is allowable under the terms of the statute. See, Interstate Transit Lines v. Commr. of Int. Rev. 319 U. S. 590, 63 S. Ct. 1279, 87 L. ed. 1607 (1943).

The Tax Court, in disallowing Northern's claimed deductions, concluded that the payments made to the loss subsidiaries were not "taxes" within the meaning of Minn. St. 1969, § 290.09, subd. 4. In reaching this determination, the Tax Court relied on its earlier decision in Minnesota Amusement Co. v. Commr. of Taxation, Docket Nos. 663 and 666, entered September 24, 1957.

In Minnesota Amusement, a corporate subsidiary taxpayer sought to deduct on its Minnesota income tax return as "taxes paid" the amount forwarded to the parent corporation which represented the tax liability on its individual return. However, as in the present case, the use of several subsidiaries' net operating losses resulted in a reduction of the group's ultimate liability on

the consolidated return. In limiting the subsidiary's deduction to a sum which represented its proportionate share of the tax payment actually transmitted to the Federal government by the consolidated group, the Board of Tax Appeals (now the Tax Court) stated:

"* * * It is the opinion of this Board that in order to qualify as a deduction under this section the federal income taxes must actually be paid and the payment of an amount to the parent who acts as agent does not satisfy the law except as to the amount that the parent, as agent, actually pays as taxes for and on behalf of Taxpayer." [2]

Although the Tax Court has had the opportunity to interpret the words "taxes paid," this is the first time the question has been presented to this court. Northern argues that the aforementioned decisions of the Tax Court should be disregarded since they did not directly address the issue of the deductibility as "taxes paid" of amounts distributed by a parent corporation to loss subsidiaries. While factual distinctions do exist between the present case and the prior Tax Court decisions, we fail to perceive any reason why the Tax Court's interpretation of the words "taxes paid," appearing in Minn. St. 1969, § 290.09, subd. 4, is inapplicable.

Other state courts have considered cases involving statutory language similar to our statute and the position advocated by Northern has been rejected. Representative of these cases is Continental Tel. Co. of Utah v. State Tax Comm. 539 P. 2d 447 (Utah, 1975), in which the Supreme Court of Utah was faced with the issue of whether subsidiaries can deduct, as "taxes paid" on their Utah income tax returns, payments transferred to the parent corporation in connection with the preparation and payment of a consolidated tax return. The Utah State Tax Commission had reduced the amount of the subsidiaries' claimed de-

---

[2] Accord, Prom, Inc. v. Commr. of Taxation, Docket No. 755, entered September 22, 1960.

ductions to the proportion that their Federal taxable income would bear to the total amount of Federal tax actually paid by the parent corporation on the consolidated return. In affirming the tax commission's determination, the Utah Supreme Court enunciated a statutory interpretation with which we agree (539 P. 2d 451):

"* * * A portion of each payment is diverted by the parent corporation to its various subsidiaries that are suffering operating losses, allowing such subsidiaries to obtain current use of their net operating losses rather than to await profitable years when such net operating losses could be carried forward and deducted from net income at that time. * * *

"* * * We agree with the view of the Tax Commission that our statutes do not contemplate such a transfer as a deduction from net state income unless such payments are actually paid to the federal government.

"It is further our opinion that the fair and reasonable interpretation of the term 'taxes paid' * * * is that it means a deduction for taxes paid or accrued which are actually paid or accrue to the taxing entity (I.R.S.) * * *."[3]

The only case which supports Northern's position is the Kansas decision in Cities Service Gas Co. v. McDonald, 204 Kan. 705, 466 P. 2d 277 (1970). In Cities Service, a profitable Kansas subsidiary corporation forwarded to the parent corporation its separate income tax return together with a check for an amount equal to the subsidiary's separate Federal tax liability. However, as a result of several other subsidiaries suffering net operating losses for the tax year in question, the consolidated income tax return filed by the parent on behalf of the group generated a tax refund from the Federal government. The Kansas subsidiary

---

[3] Accord, Buick Motor Co. v. City of Milwaukee, 48 F. 2d 801 (7 Cir. 1931), certiorari denied, 284 U. S. 655, 52 S. Ct. 34, 76 L. ed. 556; Standard Oil Co. v. State, 55 Ala. App. 103, 313 So. 2d 532 (1975); State v. Western Grain Co. 55 Ala. App. 690, 318 So. 2d 719 (1975); Trunkline Gas Co. v. Collector of Rev. 182 So. 2d 674 (La. App. 1965).

sought to deduct, on its Kansas income tax return, the amount it forwarded to the parent corporation. Despite the fact that the consolidated group never paid the Federal government any tax for the tax year in question, the Kansas Supreme Court allowed a deduction, under its statute, for the amount paid by the subsidiary to the parent corporation.

In the present case, the Tax Court was able to distinguish the Cities Service decision based upon a difference in statutory language between the Kansas statute and Minn. St. 1969, § 290.09, subd. 4. The Kansas statutory scheme would allow a deduction for Federal income taxes "paid or incurred." Such language does not appear in our statute. The inclusion of this additional language could be construed to allow a deduction of an amount not actually transmitted to the Federal government as a tax payment. However, we have reviewed the Cities Service decision at length and are not persuaded that it represents a proper application of legal principles irrespective of the additional statutory language.

Northern sought to bolster its position through the presentation of competent evidence that the accounting procedure involved herein was consistent with generally accepted accounting methods. We do not dispute this testimony. The accounting methods employed by Northern represent the proper management of internal cash flow once the parent elects to file a consolidated income tax return. However, there are no requirements under Federal law that the loss subsidiaries be reimbursed for the consumption of their losses by the group to reduce the overall tax liability of the group on the consolidated income tax return.

Thus, we hold that the words "taxes paid" in Minn. St. 1969, § 290.09, subd. 4, only allow a deduction for tax payments actually transmitted to the governmental taxing entity. Although Northern's reimbursement procedure may be founded upon an efficient and accepted accounting practice, to treat this voluntary payment in the same manner as funds compelled to be paid to the United States government under its tax laws represents, to

this court, an illogical extension of the rather simple term "taxes paid" as it appears in our statute.

Affirmed.

MR. CHIEF JUSTICE SHERAN took no part in the consideration or decision of this case.