BUNGE CORPORATION and Bunge Export Corporation, Relators,

v.

The COMMISSIONER OF REVENUE, Respondent.

No. 51202.

Supreme Court of Minnesota.

May 15, 1981.

Gray, Plant, Mooty, Mooty & Bennett, Clinton A. Schroeder, John P. James and Elizabeth M. Schmidt, Minneapolis, for relators.

Warren Spannaus, Atty. Gen., and C. H. Luther, Deputy Atty. Gen., Department of Revenue, St. Paul, for respondent.

PETERSON, Justice.

This appeal concerns the effect, under Minnesota income tax law, of transactions between relator Bunge Corporation (hereafter Bunge) and its subsidiary, relator Bunge Export Corporation (hereafter Bunge Export), a corporation qualified as a Domestic International Sales Corporation (DISC) under federal law. Respondent Commissioner of Revenue issued an order disallowing deductions for commissions and interest paid by Bunge to Bunge Export for the years 1973 through 1976. The tax court determined that commission payments made by the parent corporation to the DISC were not deductible as ordinary and necessary business expenses. Relators appeal from the tax court decision. We affirm.

Bunge is a buyer, processor, seller, and exporter of grain and other agricultural commodities, with its legal and commercial domicile in New York. It has business operations in Minnesota as well as numerous other states, and it pays Minnesota income tax based on the three-factor apportionment formula of Minn.Stat. § 290.19 (1978).

In 1972, Bunge formed Bunge Export, a wholly owned subsidiary incorporated in Delaware, with New York as its commercial domicile. Bunge Export was organized to take advantage of the favorable income tax treatment given to corporations qualifying

as DISCs. *See* I.R.C. §§ 991–97. Under the DISC provisions of the Internal Revenue Code, a parent corporation may receive a deduction on federal income tax of 50% of export profits for commissions paid by the parent to the DISC. The DISC itself is not subject to federal income tax, but the parent corporation must include in its taxable income 50% of the DISC's income as a "dividend." There is a tax deferral on the remaining 50% of the DISC's income. *See* I.R.C. §§ 994–95.

Bunge and Bunge Export entered into an agreement making the subsidiary the commission sales agent of the parent corporation with respect to sales that give rise to "qualified export receipts" as defined in section 993(a) of the Internal Revenue Code. Bunge Export elected to become a DISC effective April 1, 1972, and has operated since that date solely for the purpose of enabling the parent corporation to receive federal income tax benefits. Bunge

Export pays no salaries since all persons performing activities on its behalf are employees of Bunge. Although the DISC has its own books and records, these are kept by employees of the parent corporation.

Bunge Export receives sales commissions and interest from Bunge and interest from other investments. It repays one-half of the commissions and interest to Bunge Corporation as DISC dividends. Also, it lends some of the commissions back to the parent in the form of short term loans which are repaid with interest. In addition, the subsidiary purchases and sells notes of the Private Export Funding Corporation (PEFCO).

Bunge, in computing its taxable income for federal income tax purposes and its net income for Minnesota income tax purposes for the years ending March 31, 1973, 1974, 1975, and 1976 deducted commissions payable to Bunge Export as follows:

| Year Ended | Commission Deduction Claimed |
|---|---|
| March 31, 1973 | 5,252,427 |
| March 31, 1974 | 51,053,488 |
| March 31, 1975 | 47,480,053 |
| March 31, 1976 | 8,915,920 |
| Total | $112,701,888 |

Respondent disallowed the commission deductions and adjusted the income of Bunge to disregard the dividends from Bunge Export by reducing the net income and the nonapportionable net income of the parent by the amount of the dividends. In addition, respondent determined that interest earned by the DISC on PEFCO obligations should be attributed to the parent.

Respondent's order indicated that the DISC arrangement artificially reduced the apportionable income of Bunge attributable to this state, with the result that Bunge received less than a fair price for the sale of its commodities, since its sales receipts were reduced by the amount of the DISC commissions paid to Bunge Export. Respondent decided that section 290.34, subdivision

1, authorized him to disregard the commission dividend arrangement and to redetermine Bunge's income to reflect what he contends that it would have been without the DISC arrangement.

Relators appealed to the tax court for a determination de novo on the merits. Respondent conceded prior to trial that interest earned by Bunge Export on its investments in the obligations of an unrelated borrower could not be taxed to Bunge. The tax court found that Bunge was entitled to interest deductions for the interest paid by it to Bunge Export. In addition, the court determined that dividends paid by Bunge Export to Bunge should not be included in Bunge's income subject to apportionment

for Minnesota income tax purposes. These two determinations have not been appealed by either relators or respondent.

The tax court also decided that Bunge is not entitled to deductions for commissions paid to Bunge Export on the basis that such commissions are not ordinary and necessary business expenses. Bunge appeals from this holding of the tax court.

1. Relators Bunge and Bunge Export contend, first, that the commissions are deductible under section 290.09. Section 290.-09, subdivision 2(a), provides: "[T]here shall be allowed as a deduction all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Relators assert that the payments made to the DISC are customary and useful and, therefore, should be considered ordinary and necessary business expenses. It is respondent's position, however, that DISC commissions are not actual "expenses" for purposes of section 290.09. He claims that the payments are, in essence, an assignment of a portion of income.

■■■ This case presents a question of first impression in this state.[1] The crucial issue is whether the commissions are "ordinary and necessary" expenses which may be deducted under section 290.09. The determination of whether a payment constitutes an ordinary or necessary business expense is a question of fact. *Commissioner v. Duberstein*, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). The fact that a taxpayer is contractually bound to make a payment, as Bunge is required to do in accordance with its agreement with Bunge Export, does not necessarily render it an ordinary expense. *Interstate Transit Lines v. Commissioner*, 319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607 (1943). It is the nature and origin of a transaction, rather than its form, that must be given controlling weight. *Id.; Tulia Feedlot, Inc. v. United States*, 513 F.2d 800, 805 (5th Cir. 1976). Thus the characterization made by the taxpayer is not determinative. *B. Forman Co. v. Commissioner*, 453 F.2d 1144 (2d Cir. 1972).

■■■ The payments made by Bunge to the DISC cannot be considered ordinary and necessary business deductions for purposes of section 290.09. The commissions are not expenses incurred in connection with Bunge's regular business activities as a dealer and exporter of agricultural commodities. Nor are they paid in satisfaction of obligations incurred in carrying on Bunge's export business. Rather, payments are assigned to the DISC for the sole purpose of complying with the separation of accounts required for federal income tax deferral.

In addition, the creation of Bunge Export has not altered the manner in which Bunge's business is conducted. Bunge Export does not have its own employees or operations, and its only purpose is to provide a mechanism for channeling export receipts. Employees of Bunge make all sales on which the commissions are paid to Bunge Export and perform the billing, collection, and recordkeeping services related to those sales. Thus, Bunge's business activities are carried on in the same manner as they were prior to the existence of the DISC.[2]

The commissions paid to the DISC are essentially an assignment of income to Bunge Export in order to shelter one quarter of its export business profits from federal income tax. Payments made to discharge obligations created as a result of an assignment of income cannot be regarded as ordinary and necessary business ex-

---

1. Kentucky is apparently the only other state that has considered the question. In *Early Daniel Co. v. Department of Revenue*, [1978] State & Local Taxes (P–H) ¶ 13, 122, an Indiana corporation, whose primary business was the purchase and sale of grain, had a grain elevator located in Kentucky. The parent company established a DISC in 1972, and the Kentucky Department of Revenue combined the incomes of the two corporations. The department's decision to tax the corporations' incomes was based upon an apportionment of the business.

2. The fact that Bunge must now review its sales transactions to determine whether they are "qualified export receipts" does not involve a significant change in the corporation's exporting business.

penses. *B. Forman Co. v. Commissioner*, 453 F.2d at 1161; *Audano v. United States*, 428 F.2d 251, 257 (5th Cir. 1970). The fact that participation in the DISC program is a legally sanctioned activity does not change this result since there is no real business purpose served by the transaction between the parent corporation and the DISC. *See Van Zandt v. Commissioner*, 341 F.2d 440 (5th Cir. 1965).

■ Relators assert that payments made to Bunge Export cannot be considered as an assignment of income since substantial amounts are invested in PEFCO obligations. They also argue that the commissions are actual business expenses because the dividends that the DISC pays the parent do not consist solely of commissions. It is clear, however, that the subsequent investment of commissions in interest-bearing securities cannot convert them into business expenses. Further, the income that Bunge Export receives is obtained directly from its parent or from the interest earned by investing funds given to it by the parent. Despite the deferment and outside investments, all commissions paid to the DISC ultimately return to the parent as dividends or loans. Consequently, the payments are not ordinary and necessary business expenses.

■ The Minnesota income tax law does not contain a provision similar to the special treatment provided for federal tax purposes in the DISC statute. The only provision relating to DISCs is found in section 290.19, subdivision 1a, which states in pertinent part: "Sales made by or through a corporation which is qualified as a domestic international sales corporation under section 992 of the Internal Revenue Code of 1954, as amended through December 31, 1976, shall not be considered to have been made within this state." Relators assert that the failure of the legislature to enact further provisions suggests that it considered the existing provisions of the Minnesota Income Tax Act adequate to handle taxation of DISCs. They contend that the inference from the legislature's action should be that payments to a DISC are ordinary and necessary business expenses.

Deductions are a matter of legislative grace, and statutes that provide for such deductions must be strictly construed. *Northern Natural Gas v. Commissioner of Revenue*, 312 Minn. 177, 251 N.W.2d 125 (1977). A taxpayer claiming to be entitled to a deduction is required to demonstrate that his claim is allowable under the terms of the statute. *Id.* The fact that the Minnesota legislature failed to enact special DISC provisions does not indicate that payments made to a DISC should be deductible under section 290.09. Although changes may be made in federal income tax law, these changes are not automatically incorporated into Minnesota tax law. *Wallace v. Commissioner*, 289 Minn. 220, 184 N.W.2d 588 (1971). Courts cannot supply what a legislature purposely omits or inadvertently overlooks. *Id.* Since the legislature has not enacted a similar tax deferment law, we cannot infer that it intended that DISC commissions should be recognized as ordinary and necessary business expenses.

2. Relators also contend that the assessment is invalid because respondent failed to comply with the Minnesota Administrative Procedure Act, sections 15.0411–.052. They claim that, by disallowing a deduction for commissions paid to the DISC, respondent was acting in accordance with an informal practice of disregarding DISCs. It is their position that this policy is a rule of broad application which was not promulgated in accordance with proper administrative rulemaking procedures.

■ It is conceded, however, that the commissioner has the power to proceed in tax matters on a case-by-case basis. This case constitutes a determination based on facts as applied to a specific party. The deduction was disallowed upon the application of provisions of chapter 290 to the circumstances involved in this action. Consequently, respondent's order cannot be considered as being based on a ruling which had been promulgated by the department of revenue.

■ Relators assert that the assessment is invalid as arbitrary and capricious

and a denial of due process because a formal rule-making procedure should have been implemented. Administrative policy may be formulated by promulgating rules or on a case-by-case determination. An agency has discretion to decide what method is appropriate in a particular situation. *Securities & Exchange Commission v. Chenery*, 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947); *American Power & Light Co. v. Securities & Exchange Commission*, 329 U.S. 90, 106, 67 S.Ct. 133, 142, 91 L.Ed. 103 (1946). We find that respondent did not abuse his discretion in issuing the order that denied Bunge a deduction for commissions paid to the DISC. We also conclude that respondent's actions were neither arbitrary nor capricious.

It is also relator's position that a denial of due process occurred when an informal statement which issued on August 10, 1972, was not subsequently followed.[3] Relators claim that the reference to section 290.34 in the statement indicated that deductions would be allowed for DISC payments except in circumstances involving tax evasion. The pronouncement, however, clearly states that federal DISC provisions will not be applied in Minnesota. There is no language in the statement that relators could have relied on to conclude that DISC commissions would be ordinary and necessary business expenses. The reference to section 290.34 does not imply that DISC deductions will only be disallowed if the commissions are part of a tax avoidance scheme.[4]

3. Next, relators argue that respondent cannot deny a deduction for the commissions on the basis that they are "sham" payments. Respondent, however, does not claim that the commission payments are a sham but, rather, that they are not ordinary and necessary business expenses under section 290.09. Thus, even though the commissions are not considered "sham" payments, no deduction will be allowed for commissions Bunge pays to Bunge Export.

4. Relators' final contention is that the assessment is invalid because it is based upon an unfair apportionment of Bunge's income between Minnesota and non-Minnesota activities. They claim that respondent's procedure for calculating the tax overstates the income apportionable to Minnesota and results in income being taxed in Minnesota which is not rationally related to activities connected with this state. It is asserted that this taxation violates the commerce clause and the due process clause.

An apportionment formula will only be disturbed when the taxpayer has proved by clear and cogent evidence that the income attributed to the state is in fact out of all reasonable proportion to the business transacted in the state and that the results are grossly disproportionate. *Moorman Manufacturing Co. v. Blair*, 437 U.S. 267, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978); *Maurice L. Rothschild & Co. v. Commissioner*, 270 Minn. 245, 133 N.W.2d 524 (1965). In this case, the dividend income and interest on

---

3. The statement provided:

Minnesota Statutes do not provide for the special tax treatment of a domestic international sales corporation as provided by P.L. 92–178, the Revenue Act of 1971 (I.R.C. Sections 991–997) for federal income tax purposes.

A Domestic International Sales Corporation will be subject to the Minnesota income tax on corporation earnings to the same extent as any other corporation, and a shareholder will include any distribution received from a DISC in taxable income to the same extent as dividends received from other corporations. If it is determined that the use of a DISC reduces income attributable to this state, the special provisions of Section 290.34 of the Minnesota Income Tax Act may be invoked.

. *See* CCH Minn.Tax Rep. § 13–089 (1972).

4. Respondent contends that Minn.Stat. § 290.-34, subd. 1 (1978), authorizes him to disregard the DISC commission arrangement between Bunge and Bunge Export in determining the amount of Bunge's income attributable to this state. Relators assert that this section only applies to tax evasion schemes. We do not need to determine whether there must be fraud or impropriety before section 290.34 may be applied since we have concluded that the deduction cannot be allowed as an ordinary and necessary business expense. Further, it is not necessary for respondent to rely on section 290.34 in making this assessment because he has authority under section 290.46 to investigate and redetermine a taxpayer's income tax.

outside investments made by the DISC are not being included in Bunge's income. Bunge Export is not required to file an income tax return in this state. Also, section 290.19, subdivision 1a, specifically excludes sales through a DISC as out-of-state sales. Thus, relators have failed to demonstrate that the portion of income attributed to this state is unreasonable and a violation of either the commerce clause or the due process clause.

The order of the tax court denying the deductions for commission payments made by the parent corporation to its DISC subsidiary is accordingly affirmed.

Affirmed.