**INTERNORTH, INC., and Northern Propane Gas Company, Appellants,**

v.

**IOWA STATE BOARD OF TAX REVIEW, Iowa Department of Revenue, and Gerald D. Bair, Director of Revenue, Appellees.**

No. 68284.

Supreme Court of Iowa.

April 20, 1983.

Robert Foster, Omaha, Neb., and Donald Gonnerman of Davis, Grace, Harvey, Horvath, Gonnerman & Rouwenhorst, Des Moines, for appellants.

Thomas J. Miller, Atty. Gen., and Harry M. Griger, Sp. Asst. Atty. Gen., for appellees.

Considered by REYNOLDSON, C.J., and HARRIS, McCORMICK, SCHULTZ and CARTER, JJ.

McCORMICK, Justice.

The questions here concern the Iowa corporate income tax liability of plaintiffs Internorth, Inc., (Northern) and Northern Propane Gas Company (Propane). Defendant Iowa Department of Revenue assessed Northern with additional income taxes for the years 1962 through 1972 based on disagreement with its method of apportioning Iowa income. The department assessed both plaintiffs with additional income taxes for 1971 through 1974 because of disagreement with their method of computing their deduction for federal income taxes. In a separate proceeding, the director of revenue denied Northern's request for permission to use an alternate apportionment method. Upon consolidated review of the two contested case proceedings, the board of tax review affirmed the department and director and, upon plaintiffs' petition for further review, the district court also affirmed. We affirm the district court.

The relevant facts are not disputed. Northern operates an interstate natural gas pipeline system. It purchases most of the gas from others at its origin, transports it through its system and sells the gas to others at its destination. Northern has title to the gas while it is being transported. The price Northern can charge for its gas is regulated by the Federal Energy Regulatory Commission. Rates are based on reimbursement to Northern for the cost of the gas plus a reasonable return to Northern based on its investment, most of which consists of the pipeline system.

Iowa corporate income taxes are imposed on interstate businesses pursuant to section 422.33 of Iowa Code (1981). In relevant part, the statute provides:

Where income is derived from business other than the manufacture or sale of tangible personal property, such income shall be specifically allocated or equitably apportioned within and without the state under rules of the director.

Where income is derived from the manufacture or sale of tangible personal property, the part thereof attributable to business within the state shall be in that proportion which the gross sales made within the state bear to the total gross sales.

§ 422.33(1)(b). Northern apportioned its Iowa income on its 1962 through 1972 returns based on a rule of the director promulgated under the first provision rather than under the single sales factor formula under the second provision.

In addition, Northern and its subsidiaries, including Propane, filed a consolidated federal income tax return for the years 1971 through 1974. Northern and Propane filed separate Iowa returns for those years. On their Iowa returns they claimed a deduction for federal income taxes as if they had filed separate federal returns.

The department challenged Northern's method of apportioning its Iowa income for 1962 through 1973 and the method used by both corporations to compute their federal income tax deduction for 1971 through 1974. Northern and Propane will each owe substantial additional taxes if the department's legal position is correct. The questions for us, as they were for the district court, are whether the agency erred in certain respects alleged by plaintiffs in its view of the law on the apportionment issue and the federal tax deduction issue. *See* § 17A.8.

■ I. *The apportionment question.* A. Statutory interpretation. Northern contends its income is not derived from the sale of tangible personal property. On this basis it argues that the director was obliged by section 422.33(1)(b) to establish an equitable apportionment method by rule. It

further argues that the director did so and that because Northern's income was apportioned pursuant to the rule the agency was wrong in disapproving the method employed.

In contending its income is not derived from the sale of tangible property, Northern focuses on the word "derived." It asserts that its income is derived from transportation rather than sales. This assertion, in turn, is based on its rate structure. Because Northern's rate of return is mainly based on its investment in its pipeline system, it reasons that its income is derived from transportation.

Like the hearing officer and all of the previous reviewing bodies, we find this argument is a non sequitur. Even though Northern's rate of return is fixed, the amount of its return is affected by the volume of sales, and no income is derived unless sales are made. Its taking title to the gas is a significant and meaningful event. Northern is in no different position in principle than a trucker would be, for example, who purchases watermelons in Texas, brings them to Iowa to sell out of the back of his truck, and fixes their price based on a percentage margin above purchase price and transportation expenses. Even if the major element affecting profit was transportation expenses, the income obviously would be derived from sale of the melons.

In making its argument, Northern relies heavily on a regulation adopted by the director to implement the statute for the situation when income is not derived from sales of tangible personal property. In material part, the regulation provided that when regulations implementing the single sales factor method were inapplicable, net income was to be apportioned by oil, gasoline and gas pipeline companies by a "traffic units" method:

> Oil, gasoline, and gas pipeline companies shall determine the proportion of transportation revenue derived from interstate business that is attributable to Iowa by the proportion of Iowa traffic units to total traffic units. The "traffic unit" of . . . a gas pipeline is defined to be the transportation of 1,000 cubic feet of natural gas or casinghead gas for a distance of one mile.

1973 IDR 921 § 22.33(1)–10(3).

Northern used this apportionment method and contends it is the correct one. If the regulation conflicted with the statute, however, the statute would prevail. *See Iowa National Industrial Loan Co. v. Iowa State Department of Revenue,* 224 N.W.2d 437, 441 (Iowa 1974). No conflict arises here because the regulation by its own terms does not apply if the statute applies. *See* 1973 IDR 920–21 §§ 22.33(1)–9 and 22.-33(1)–10. Moreover, the statute and regulation are not inconsistent. As the agency points out, the regulation would apply to the small fraction of Northern's income derived from transportation of gas that it does not purchase. Thus the regulation can and should be given a harmonizing interpretation. *See Iowa National Industrial Loan Co.,* 224 N.W.2d at 441. We find no merit in any of Northern's arguments to the contrary. We agree with the agency's interpretation of section 422.33(1)(b).

B. *Estoppel.* Northern's estoppel argument is premised on the department's alleged acquiescence in Northern's use of the traffic units formula for the years involved. Acquiescence, according to Northern, is established by the department's failure to challenge its use of the traffic units formula despite at least two occasions when it could have done so.

In 1967 the agency assessed Northern additional taxes for years 1957 through 1963. The only years relevant here are 1962 and 1963. The amounts of the assessments were merely estimated, and the basis for the assessment does not appear. Because of a pending controversy between Northern and the Internal Revenue Service, the assessment was never enforced.

In 1970 a department auditor sent Northern a letter asking payment of additional income taxes for 1965 and 1966. The auditor did not raise any issue about Northern's use of the traffic units formula but, using the formula Northern had used, alleged additional taxes were owed. At Northern's request, the auditor's demand was held in

abeyance because of another pending controversy between Northern and the IRS.

▮ Assuming the doctrine of estoppel is available to Northern when income taxes are involved, we find no proof of acquiescence by the department in use of the traffic units formula which could rise to a representation upon which Northern could or did rely. The 1967 assessment proves nothing. The mere failure to collect a tax is not a misrepresentation. *See S & M Finance Co. Fort Dodge v. Iowa State Tax Commission,* 162 N.W.2d 505, 511 (Iowa 1968). Furthermore, the auditor's failure to raise the issue in 1970 when challenging Northern's tax returns on a separate basis is insufficient to show either that the agency approved Northern's apportionment method or that Northern could and did rely on the letter as an agency representation that its apportionment method was correct.

▮ The burden to establish all of the elements of estoppel was on Northern. *See Iowa Movers & Warehousemen's Association v. Briggs,* 237 N.W.2d 759, 764 (Iowa), *cert. denied,* 429 U.S. 832, 97 S.Ct. 94, 50 L.Ed.2d 96 (1976). That burden was not met here.

▮ C. *Constitutionality.* Northern attacks the constitutionality of the sales apportionment method under the due process clause of the fourteenth amendment and the Commerce Clause of the United States Constitution. It seeks to distinguish this case from *Moorman Manufacturing Co. v. Bair,* 437 U.S. 267, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978), by alleging the sales factor formula is inherently arbitrary as applied to a regulated utility. While Northern's rate of return is determined by its investment, this does not necessarily mean the statute is arbitrary because it apportions Northern's net income to Iowa based on its Iowa sales. Beyond that, as in *Moorman,* no evidence was introduced in this case from which it could be deduced that the tax was not actually fairly apportioned to Northern's business in Iowa. We find no merit in Northern's constitutional attack.

D. *Agency discretion.* While its appeal from the first contested case decision was pending before the board of tax review, Northern applied to the director for authority to use the traffic units formula for tax years 1962 through 1977. Pursuant to stipulation, the director decided the issue on the record made in the first proceeding. He denied Northern's request. Northern appealed to the board, and the proceedings were consolidated for purposes of all subsequent review.

Under section 422.33(2), any taxpayer who believes that the prescribed apportionment method "has operated or will so operate as to subject him to taxation on a greater portion of his net income than is reasonably attributable to business or sources within the state," may apply to the director for relief. If the director finds the proof persuasive,

> the director shall redetermine the taxable income by such other method allocation and apportionment as seems best calculated to assign to the state for taxation the portion of the income reasonably attributable to business and sources within the state, not exceeding, however, the amount which would be arrived at by application of the statutory rules for apportionment.

▮ This provision gives the administrator discretion to grant relief in appropriate cases. *See Moorman Manufacturing Co. v. Bair,* 254 N.W.2d 737, 754 (1977), *aff'd,* 437 U.S. 267, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978). Income must, of course, be apportioned pursuant to the statutory formula unless the taxpayer demonstrates the effect is to subject a greater portion of net income to Iowa than is "reasonably attributable" to business done here. Section 422.33 "manifests an intent on the part of the legislature to impose a tax on all foreign corporate activities in Iowa that can reasonably be said to produce income." *American Home Products v. Iowa State Board of Tax Review,* 302 N.W.2d 140, 144 (Iowa 1981).

▮ Like the taxpayer in *Moorman,* Northern failed to produce evidence from which the amount of its net income reason-

ably attributable to its Iowa activities could be determined. Having failed to do so, it did not provide a basis for the director to find that the income apportioned to Iowa by the sales factor formula was not "reasonably attributable" to Northern's Iowa activities. Northern did not establish an abuse of discretion under the standards in either *W.R. Grace & Co. v. Commissioner of Revenue,* 378 Mass. 577, 393 N.E.2d 330 (1979), or *People ex rel. Sheraton v. Tax Commission,* 15 A.D.2d 142, 222 N.Y. S.2d 192, aff'd, 13 N.Y.2d 802, 242 N.Y.S.2d 226, 192 N.E.2d 180 (1963). Its argument is theoretical and speculative. We find no abuse of discretion in the director's refusal to permit the traffic units formula to be used.

II. *The deduction for federal taxes.* Northern and Propane each claimed a deduction on their 1971 through 1974 Iowa corporate returns for federal income taxes "paid or accrued." During those years Northern and its subsidiaries filed a consolidated federal return. Northern and Propane, however, claimed a deduction for federal taxes on their separate state returns as if they had also filed separate federal returns. The department disallowed those deductions and limited the deductions to the appropriate portion of federal income tax actually shown on the consolidated federal return. Plaintiffs contend this was error.

The relevant statute is section 422.35(4), which provides:

The term "net income" means the taxable income before the net operating loss deduction, as properly computed for federal income tax purposes under the Internal Revenue Code of 1954, with the following adjustments:

.  .  .  .  .

4. Subtract fifty percent of the federal income taxes paid or accrued, as the case may be, during the tax year, adjusted by any federal income tax refunds; and add the Iowa income tax deducted in computing said taxable income.

.  .  .  .  .

Provided, however, that a corporation affected by the allocation provisions of section 422.33 shall be permitted to deduct only such portion of the deductions for net operating loss and federal income taxes as is fairly and equitably allocable to Iowa, under rules prescribed by the director.

The legal issue is whether the federal income tax liability as computed for separate federal returns can be said to have been "paid or accrued" when a consolidated return was in fact filed.

The same legal issue has been resolved against the position urged by plaintiffs in nine of ten decisions made on the subject in other jurisdictions. See *Buick Motor Co. v. City of Milwaukee,* 48 F.2d 801 (8th Cir.), cert. denied, 284 U.S. 655, 52 S.Ct. 34, 76 L.Ed. 566 (1931); *State v. Western Grain Co.,* 55 Ala.App. 690, 318 So.2d 719, cert. denied, 294 Ala. 770, 318 So.2d 722 (1975), appeal dismissed, 424 U.S. 960, 96 S.Ct. 1452, 47 L.Ed.2d 728 (1976); *Arizona Department of Revenue v. Transamerica Title Insurance Co.,* 124 Ariz. 417, 604 P.2d 1128 (1979); *Corp. of America v. Johnson,* 7 Cal.2d 295, 60 P.2d 417 (1936); *Truckline Gas Co. v. Collector of Revenue,* 182 So.2d 674 (La.App.1965), cert. denied, 248 La. 1101, 184 So.2d 25 (1966); *Northern Natural Gas Co. v. Commissioner of Revenue,* 312 Minn. 177, 251 N.W.2d 125 (1977); *Armco Steel Corp. v. State Tax Commission,* 580 S.W.2d 242 (Mo.1979); *Continental Telephone Co. of Utah v. State Tax Commission of Utah,* 539 P.2d 447 (Utah 1975). The contrary decision is *Cities Service Gas Co. v. McDonald,* 204 Kan. 705, 466 P.2d 277 (1970).

■ A tax is a charge levied to pay the cost of government. *Newman v. City of Indianola,* 232 N.W.2d 568, 573 (Iowa 1975). Under the cases holding against Northern's position, a tax is not paid unless the amount is transmitted to the government, and a tax does not accrue when it is neither charged nor owed.

■ Northern and Propane read the statute and an implementing regulation as authorizing computation of the deduction on a

fair and equitable accounting basis. The fair and equitable requirement, however, is a limitation on the statutory deduction. It does not purport to let the taxpayer choose an accounting method that enlarges the deduction beyond the amount of federal tax actually paid or accrued on the consolidated return.

Plaintiffs are trying, understandably, to have the best of both worlds. They seek to reduce federal tax liability by filing a consolidated return. At the same time, they seek to reduce state tax liability as if they had filed separate federal returns showing a greater federal tax liability. Section 422.-35(4) does not allow them to have both advantages. Having only paid or accrued the federal tax liability shown on the federal returns, their state deduction must be computed on that amount.

We find no merit in plaintiffs' contentions.

AFFIRMED.