**NORTHWEST TERRITORIES GOLD AND SILVER EXCHANGE, INC., Relator,**

**v.**

**COMMISSIONER OF REVENUE, Respondent.**

No. C8–85–251.

Supreme Court of Minnesota.

Nov. 22, 1985.

George L. May, Hastings, for relator.

Hubert H. Humphrey, III, Atty. Gen., James W. Neher, Sp. Asst. Atty. Gen., Dept. of Revenue, St. Paul, for respondent.

SIMONETT, Justice.

This is an appeal by a coin dealer of an assessment for a sales tax deficiency. Except as to 34 sales, we affirm the assessment and the Minnesota Tax Court's finding that exemption certificates taken by the dealer in connection with its sales of gold and silver were not taken in good faith.

Relator, Northwest Territories Gold & Silver Exchange, Inc., is a Minnesota corporation engaged in buying and selling coins and precious metals. In 1977 the precious metals market became quite volatile, and, in an effort to meet competition, particularly from out-of-state dealers, Northwest sought means to avoid the state sales tax. In a telephone call to the Minnesota Department of Revenue, Northwest's president, Jay Anderson, was told that the sales tax must be collected on all sales unless the goods were shipped out of state or the purchaser presented a retail exemption certificate. Anderson also consulted with a tax attorney who told him, generally, that the law was unclear how frequently a purchaser must resell to qualify for an exemption and that a dealer would have to rely on its customers to learn whether they would be actively reselling.

Northwest then instituted a procedure whereby customers were asked if their purchase was for the purpose of resale. If so, the customer was advised that such purchases would be exempt from sales tax if the purchaser held a retail sales permit and signed an exemption certificate.[1] If the

---

1. Northwest gave its customers a letter in which it stated, in part, that "[t]he Application for Minnesota Tax Identification Number you have completed allows you to purchase gold, silver, and numismatics (rare coins) for the purpose of resale at a profit and not pay Minnesota state tax when you purchase. (Gold, silver and numismatic items are not 'consumed' products and are purchased by the individual for the sole purpose of reselling these items at a profit.)"

customer chose not to pay the sales tax, Northwest would prepare a retail sales permit application and an exemption certificate, both forms that it had on hand, for the customer's signature. In the certificate the customer certified he or she was engaged in the business of selling "Gold, Silver and/or Rare Coins for the Purpose of Resale at a Profit." Many customers indicated to Northwest that they were purchasing precious metals for their investment portfolios and hoped some day to resell at a profit. By having these customers sign exemption certificates, Northwest was, in effect, advising customers purchasing for investment that they qualified as retailers in the business of buying and selling precious metals.

Eventually the revenue department audited the period January 1, 1978, through March 31, 1980. The exemption certificates filled out by Northwest aroused suspicion because of their surprising uniformity. Every certificate contained virtually identical language in identical typeface. Further, the certificates stated that the purchaser's tax identification number had been applied for. Investigation showed the applications had been made at the time the exemption certificates were signed, indicating that the purchaser had not previously been in the business of buying and selling gold and silver. Each customer's tax account history indicated no reported sales had been made by that customer in the months preceding the audit. Accordingly, the commissioner concluded that exemption certificates for some 215 transactions had not been prepared "independent of" Northwest and had not been taken in good faith. The commissioner further concluded that these purchases were, in fact, taxable retail sales.

The letter goes on to state that the customer is responsible for collecting a sales tax if the customer later sells the coins to a nonexempt individual.

2. Minn.Stat. § 297A.09 (1984) provides:
   For the purpose of the proper administration of sections 297A.01 to 297A.44 and to prevent evasion of the tax, it shall be presumed that all gross receipts are subject to the

The commissioner of revenue assessed a sales tax deficiency of $92,355.02 plus interest on Northwest for failure to collect sales taxes on approximately 400 transactions. Northwest conceded tax liability on those sales included in the audit for which it did not have exemption certificates, but contested liability for 215 sales for which it had certificates. At trial before the tax court, the commissioner introduced the testimony of 12 Northwest customers whose exemption certificates had been rejected. They testified essentially that they had purchased for investment purposes, intending to resell depending on the market. Jay Anderson also testified, identifying a number of his customers whose certificates had been rejected as active dealers. The tax court found that Northwest had not taken the exemption certificates in good faith, that the customers had purchased for investment purposes, and affirmed the commissioner's assessment. Northwest, by certiorari, seeks further review here.

The issue is whether the evidence supports the tax court's finding that the exemption certificates were not taken in good faith. This raises the further issue of whether the purchase of gold and silver for investment purposes is a retail sale.

Minnesota imposes a sales tax on the retail sale of tangible personal property. *See* Minn.Stat. § 297A.02, subd. 1 (1984). The tax is to be stated separately from the sales price and collected by the seller from the purchaser. Minn.Stat. § 297A.03, subd. 1 (1984). All sales are presumed to be taxable retail sales unless the seller takes an exemption certificate from the buyer.[2] If the seller takes the exemption certificate "in good faith," the certificate

tax until the contrary is established. The burden of proving that a sale is not a sale at retail is upon the person who makes the sale, but he may take from the purchaser an exemption certificate to the effect that the property purchased is for resale or that the sale is otherwise exempt from the application of the tax imposed by sections 297A.01 to 297A.44.

will "conclusively relieve" the seller from collecting the sales tax.[3]

Chapter 297A does not define the phrase "taken in good faith." The department of revenue has, however, promulgated the following rule:

Although the seller is under no duty to ascertain beyond all reasonable doubt that the purchaser is acquiring the property for resale, the provision that he act in good faith requires the seller to exercise reasonable care and judgment before accepting the resale exemption certificate. The good faith provision requires that the seller accept only certificates meeting the requirements of Minnesota Statutes, section 297A.11.

Minn.Rules § 8130.3000, subp. 2 (1985).

■ Administrative regulations have the force of law unless inconsistent with statutory provisions. *See* Minn.Stat. § 297A.29 (1984); *Sellner Mfg. Co. v. Comm'r of Taxation*, 295 Minn. 71, 202 N.W.2d 886 (1972). The foregoing rule defining good faith is consistent with the statutory provisions and, we hold, valid.

■ Northwest argues the burden of proof should be on the commissioner to show the company did not take exemption certificates in good faith. We disagree. We hold that the burden is on the seller to prove that it took an exemption certificate in good faith. *See* Minn.Stat. § 297.33, subd. 5 (1984) (the tax as determined and assessed by the commissioner is presumed to be valid and "the burden shall be upon the person required to file the return to establish the incorrectness or invalidity of the assessment"). *See also* Minn.Stat. § 297.09 (1984) ("it shall be presumed that all gross receipts are subject to the tax until the contrary is established").

Northwest next argues that if it has the burden of proof, it met that burden.

Northwest says it acted in good faith and in the exercise of reasonable care and judgment. At the heart of relator's claim of good faith is its contention that purchases of gold and silver for investment purposes are not sales at retail, but only purchases for resale, and hence exempt from a sales tax.

■ The parties agree that gold and silver coins or bullion are tangible personal property to which the sales tax applies. *Accord Scotchman's Coin Shop v. Commission*, 654 S.W.2d 873 (Mo.1983) (en banc); *Thorne & Wilson, Inc. v. Utah State Tax Comm'n*, 681 P.2d 1237 (Utah 1984). Ordinarily, gold and silver are not (unless, say, converted into jewelry) consumable items and would be expected at one time or another to be resold. The fact, however, that the purchaser of an item of tangible personal property may at one time or another resell the item does not necessarily mean the purchase is not a retail sale. A retail sale, as defined by Minn. Stat. § 297A.01, subd. 4 (1984), is a sale "for any purpose other than resale *in the regular course of business.*" (Emphasis added.) This means a sale is at retail unless the customer's resales are of a kind and frequency characteristic of a regular course of a business. The resales must meet the "requirement of commercial continuity or consistency" implicit in the operation of a business. *Rose v. Executive Director of Dept. of Revenue*, 42 Colo.App. 319, 593 P.2d 982, 983 (1979).[4] A customer who buys coins to invest—to hold for a rise in the market—is not ordinarily considered a "retailer"; an investor's resales lack the commercial continuity or consistency of a regular course of business. Here the tax court found that Northwest's sales were at retail and that Northwest's customers purchased for investment purposes. These

---

3. Minn.Stat. § 297A.10 (1984) provides:

The exemption certificate will conclusively relieve the retailer from collecting and remitting the tax only if taken in good faith from a purchaser who holds the permit provided for in section 297A.06.

4. *Compare* Minn.Stat. § 297A.041 (1984), enacted at ch. 327, § 3, 1983 Minn.Laws 2092, 2093 (persons renting space to participate as sellers in a craft or coin show must hold retail sales permits if the event "involv[es] a series of sales sufficient in number, scope, and character to constitute a regular course of business").

findings as to most, if not all, of the transactions are supported by the evidence.

Northwest contends that even if the sales at issue were retail sales, it is nevertheless relieved from collecting the sales tax because it took retail exemption certificates in good faith from the customers. Good faith, however, requires the exercise of reasonable care and judgment, which Northwest argues was evidenced by its consultation with a tax attorney regarding the sales tax laws. The tax court, on the other hand, thought it significant that Northwest did not request a written ruling from the department of revenue or even an attorney's written opinion as "any prudent person" would have done. In any event, it seems to us enough to observe that the tax advice received by Northwest was general in nature and that Northwest devised its certificate procedure on its own. Northwest knew its customers were simply investors and yet took it upon itself to advise that they qualified for the resale exemption. Northwest did not take the certificates in reliance on its customers' representations that they were entitled to the exemption. To the contrary, the customers relied on Northwest's advice in signing the certificates. Under these circumstances, the tax court could find, as it did, that Northwest did not take the exemption certificates in good faith.[5]

At trial Jay Anderson identified some 34 customers known by him and in his business as active coin and precious metal dealers. If Northwest believed, in good faith and in the exercise of reasonable care and judgment, that these customers were active dealers, it might be found that these exemption certificates were taken in good faith. It is not clear if the tax court disallowed these certificates because it did not find Anderson's testimony credible or because the court erroneously assumed that Northwest was conceding these sales to be retail sales. At trial, the commissioner acknowledged, through counsel, that some of the certificates may have been erroneously rejected, and again in oral argument before us, counsel stated a willingness to reexamine some of these transactions.

We affirm the tax assessment except as to the 34 transactions mentioned. As to the 34 sales, we reverse and remand to the tax court to reconsider whether, as to any of them, relator met its burden of proving it took certificates in good faith.

One last issue remains. Robert Peck, a tax examiner for the department, testified that in deciding which exemption certificates to disallow, the department considered if the purchaser ever collected a sales tax at a later time, if the purchaser was a coin dealer, and "good common sense." Northwest argues that establishment of these "criteria" constituted unauthorized rulemaking. We disagree. The department was doing no more than making "a determination based on facts as applied to a specific party." *Bunge Corp. v. Commissioner of Revenue*, 305 N.W.2d 779, 784 (Minn.1981).

Affirmed in part and reversed in part.

PETERSON, J., took no part in the consideration or decision of this case.

---

5. Northwest argues that if the purchasers, contrary to their certifications, were not, in fact, entitled to retail exemptions, then the commissioner should collect the delinquent sales tax directly from them, citing Minn.Stat. § 297A.12 (1984). Whatever might be a customer's responsibility to pay the tax or the commissioner's to collect it, we need not decide. The commissioner has declined to pursue the customers here, and Northwest is not in a position to evade its responsibilities by pointing to what someone else might or should do.