745 P.2d 108

**STATE of Arizona, ex rel., ARIZONA DEPARTMENT OF REVENUE, Plaintiff–Appellant,**

v.

**ARIZONA SAND & ROCK COMPANY, Defendant–Appellee.**

**No. 1 CA–CIV 8653.**

Court of Appeals of Arizona, Division 1, Department C.

July 10, 1986.

Robert K. Corbin, Atty. Gen. by Gail H. Boyd, Asst. Atty. Gen., Phoenix, for plaintiff-appellant.

H. Jay Platt, St. Johns, for defendant-appellee.

## OPINION

CONTRERAS, Judge.

This is an appeal from summary judgment granted Arizona Sand & Rock Co. (AS & R) in an action brought by the Arizona Department of Revenue (ADR) from a redetermination by the Board of Tax Appeals of AS & R's state tax deduction for federal income taxes paid for the fiscal years ending April 30, 1978, and April 30, 1979. Because we determine that AS & R followed the correct allocation formula in calculating its deduction, we affirm the summary judgment entered below.

The pertinent facts are undisputed. AS & R is a wholly-owned subsidiary of California Portland Cement Company (CPC). AS & R joins with CPC and other affiliated corporations in filing consolidated federal income tax returns pursuant to 26 U.S.C. §§ 1501–04. As a consequence, the consol-

idated group of affiliated corporations incurs a single federal income tax liability. As our supreme court stated in *Arizona Department of Revenue v. Transamerica Title Insurance Company*, 124 Ariz. 417, 604 P.2d 1128 (1979):

> Bittker and Eustice, *Federal Income Taxation of Corporations and Shareholders* § 15.23 (4th ed. 1979) states that the basic concept underlying the Internal Revenue Code provisions allowing a consolidated federal income tax return is:
>
> > "[T]hat the consolidated group constitutes in substance, a single taxable enterprise, despite the existence of technically distinct entities; as such, its tax liability ought to be based on its dealings with 'outsiders,' rather than on intragroup transactions. This 'single taxpayer' concept lies at the heart of the treatment, both past and present, of intercompany transactions which, in general, are eliminated in computing the group's consolidated taxable income. In effect, the results are not unlike the 'joint return' treatment of a husband and wife."

124 Ariz. at 421, 604 P.2d at 1132.

AS & R operates solely within Arizona, and accordingly, all its income is attributable to Arizona. For the two taxable years at issue on appeal, AS & R and CPC were the only members of the affiliated group that produced any substantial net income. All other members of the affiliated group either generated negligible net income or operated at a net loss.[1] AS & R, CPC and various other members of the affiliated group generated investment tax credits which operated to reduce the consolidated group's federal income tax liability for those years. *See* 26 U.S.C. § 38 and § 46 *et seq.*

Only the state income tax liability of AS & R is at issue in this case. Pursuant to former A.R.S. §§ 43–123(c) and 43–123.05 (now A.R.S. §§ 43–1022(11) and 43–

---

1. During the fiscal year ending April 30, 1979, the net incomes of AS & R and CPC equaled 99.865 percent of the total net income of the affiliated group. During that fiscal year a third company in the group earned the remainder of the group's total net income. Both parties have treated AS & R and CPC as the only "gain" members of the affiliated group for the taxable years in question.

1043(A)(5)), AS & R could deduct federal income taxes "paid, accrued or withheld during the taxable year" in computing its taxable income for Arizona income tax purposes. Due to AS & R's participation with its affiliated group in filing a single, consolidated federal income tax return for the years in question, however, AS & R did not compute and file its own separate federal income tax liability for those years. Thus, for each taxable year, it was necessary to compute AS & R's state deduction for federal income taxes paid by means of an arithmetic formula designed to allocate to AS & R its proportionate share of the consolidated group's unitary federal income tax liability.

The dispute which generated this litigation initially arose when, in connection with an examination of AS & R's income tax returns for the fiscal years ending 1975 through 1979, ADR partially disallowed AS & R's deductions for federal income taxes on its 1978 and 1979 returns. AS & R petitioned the ADR appeals section for a redetermination of the partial disallowance. The director of ADR held ADR's calculation of the deductions was correct. AS & R appealed to Division II of the Board of Tax Appeals which subsequently held for AS & R.

Thereafter, ADR brought this action in superior court pursuant to former A.R.S. §§ 43–552 and 43–553 (now A.R.S. § 42–124). Both parties moved for summary judgment, and the trial court initially ruled for ADR. Before AS & R's motion for a rehearing of that ruling was heard, however, the trial court *sua sponte* issued a minute entry stating:

> The Court has reconsidered its minute order dated February 21, 1985. In so doing, the Court has reread *Transamerica* and *Anderson, Clayton & Co.* The Court is now convinced that its original order was incorrect and that Defendant's Motion for Summary Judgment should be granted and Plaintiff's Motion for Summary Judgment denied. Therefore,

IT IS SO ORDERED.[2]

Accordingly, the Court declines to approve the judgment submitted by Plaintiff.

Formal judgment for AS & R was entered on October 8, 1985.

The fundamental issue in this case is which of the two competing deduction allocation formulas advocated by the parties is legally correct. The dispute centers around the divergent way in which these two formulas treat the federal investment tax credits generated by the various members of the affiliated group, including AS & R and CPC. Both formulas seek generally to determine the amount of AS & R's state deduction for federal income taxes by applying a fraction, called the "net-to-net ratio," to a quantity that is based upon and related to the affiliated group's federal income tax liability for the year in question. The net-to-net- ratio is a fraction of which the numerator is AS & R's net income for the year in question, and the denominator of which is the sum of the net incomes of the "gain" members of the affiliated group for that year. *See generally Motorola, Inc. v. Arizona Department of Revenue,* 143 Ariz. 491, 694 P.2d 321 (App.1984); *Arizona Department of Revenue v. Transamerica Title Insurance Company,* 124 Ariz. 428, 430 n. 2, 604 P.2d 1139, 1141 n. 2 (App.1979), *vacated* 124 Ariz. 417, 604 P.2d 1128 (1979).

In this case, the parties agree upon the specific values of the net-to-net ratios for the two taxable years in question. The calculation of the net-to-net ratio, however, is the only point of congruence between their two formulas. The formula advocated by AS & R computes the deduction for federal taxes by applying the net-to-net ratio to a quantity equal to the sum of the consolidated net federal income tax liability of the affiliated group for the year plus the non-Arizona investment tax credits earned by all members of the affiliated group. AS

**2.** The trial court's references are to *Arizona Department of Revenue v. Transamerica Title Insurance Company,* 124 Ariz. 417, 604 P.2d 1128 (1979), and *Anderson, Clayton & Co. v. DeWitt,* 20 Ariz.App. 474, 513 P.2d 1357 (1973), discussed *infra* at 7–19.

& R's formula may be expressed as the following equation:

$$D = (CN + NAI) \times NTN,$$

where D is AS & R's Arizona income tax deduction for federal income taxes, CN is the affiliated group's consolidated net federal income tax liability, NAI is the total of all non-Arizona investment tax credits earned by members of the affiliated group, and NTN is the value of the net-to-net ratio for the year in question.

The competing formula advocated by ADR is significantly different. ADR's formula adds to the affiliated group's actual federal tax bill for the year the total value of all the investment tax credits generated by the affiliated group for the year in question, effectively reconstructing the affiliated group's gross federal income tax liability—the amount of federal income taxes it would have had to pay had it not been able to reduce its tax liability through investment tax credits. ADR's formula then multiplies this quantity by AS & R's net-to-net ratio for the year, thereby theoretically allocating to AS & R its proportionate share of the affiliated group's gross federal income tax liability. Finally, AS & R's state income tax deduction for federal income taxes is determined by subtracting the value of the investment tax credits which AS & R generated during the year in question from AS & R's proportionate share of the gross federal income tax liability. ADR's formula can be expressed as follows:

$$D = [(CN + I) \times NTN] - AI,$$

where I is the value of all investment tax credits earned by all members of the affiliated group, AI is the value of the Arizona investment tax credits generated by AS & R, and the other symbols have the same meaning as in the formula urged by AS & R, *supra.*

In support of its formula, ADR relies upon what it urges as the "fundamental" holding of *Arizona Department of Revenue v. Transamerica Title Insurance Company,* 124 Ariz. 417, 604 P.2d 1128 (1979), that a member of an affiliated group may claim as its deduction for federal taxes only an amount "proportionate to

the federal taxes actually paid by the parent...." *Id.* at 420–21, 604 P.2d at 1131–32. ADR correctly notes that under some circumstances the formula advocated by AS & R, when used to calculate the state deduction for federal income taxes allocable to each gain member of a given affiliated group for each state in which the group operates, will yield an aggregate sum that exceeds the amount the affiliated group actually paid for federal income taxes. ADR argues that AS & R's formula yields a deduction that improperly includes a component representing federal tax liability that has actually been extinguished by investment tax credits. ADR argues that in contrast, its own formula allocates among the members of the affiliated group the actual taxes paid on behalf of the group, assuming adjustments are made for investment tax credits generated and recaptured by non-gain members of the affiliated group.

ADR also argues that although the court in *Transamerica Title* specifically approved the formula urged by AS & R in the instant case, it did not intend to preclude the use of alternative formulas on different facts. ADR contends that the specific holding of *Transamerica Title* concerning the proper treatment of investment tax credits in computing the deduction for federal taxes depended on facts that are substantially different from those in the instant case, and that the decision should accordingly be "expanded" so as to validate the formula advocated by ADR and reject that advocated by AS & R.

Our evaluation of ADR's contentions must begin with a discussion of *Anderson, Clayton & Co. v. DeWitt,* 20 Ariz.App. 474, 513 P.2d 1357 (1973), on whose rationale the court in *Transamerica Title* specifically relied in discussing the appropriate treatment of investment tax credits in calculating the state deduction for federal income taxes. *Anderson, Clayton* concerned the effect of foreign tax credits in that calculation. There, the taxpayer was a multistate corporation that had income attributable to sources within Arizona, sources in other states of the United States, and sources

outside the United States. Its foreign source income was subjected to income taxation by the foreign countries in which it was earned. Under U.S. tax law, the foreign source income was also included in the taxpayer's income for federal tax purposes. To avoid double taxation of the same income by both the United States and a foreign country, U.S. tax law allowed the taxpayer's gross federal income tax liability to be reduced by the amount of the taxpayer's foreign income tax payments. *See* 26 U.S.C. § 901 *et seq.* The amount of that reduction is referred to as the foreign tax credit. *Id.* *See generally* Bittker and Eustice, *Federal Income Taxation of Corporations and Shareholders* para. 17.11, at 17–28, 17–31 (4th ed. 1979).

As in the instant case, the problem in *Anderson, Clayton* was to calculate the taxpayer's Arizona deduction for federal income taxes by allocating an appropriate share of the taxpayer's federal tax bill to its Arizona source income. The Arizona State Tax Commission, ADR's predecessor, sought to calculate this share by multiplying the taxpayer's federal tax bill by a ratio the numerator of which was the taxpayer's Arizona income and the denominator was its worldwide income. The taxpayer urged, however, that the Commission's formula failed to attribute a sufficient proportion of its federal income tax bill to its Arizona income, reasoning that:

[B]ecause of the deduction of the foreign tax credit relating to the foreign source income, with the concomitant reduction in federal income tax paid, the remaining balance of federal income tax actually paid was properly allocable only to the balance of Anderson, Clayton's income after deducting the foreign source income.

20 Ariz.App. at 476, 513 P.2d at 1359. This court agreed with the taxpayer that to counterbalance the foreign source income included in the denominator of the allocation ratio, the ratio should be applied to an amount equal to the taxpayer's actual federal tax bill increased by the foreign tax credit. Thus, the appropriate formula was as follows:

$$\frac{\text{Arizona Income}}{\substack{\text{Worldwide Income} \\ \text{(including foreign} \\ \text{source income)}}} \times \substack{\text{(Federal tax paid} \\ \text{plus foreign tax} \\ \text{credit)}} = \substack{\text{Federal Income} \\ \text{Tax Deduction}}$$

The court stated:

We do not think that it can be realistically contended that the net amount of federal income tax actually paid by Anderson Clayton should be allocated between the *fully taxed* (federally speaking) Arizona income and the balance of its worldwide income, including the *essentially untaxed* (again, federally speaking) foreign source income. We say "essentially untaxed" because in a very real sense this foreign source income has had a portion, if not all, of the federal income tax burden removed from it through application of the foreign tax credit.

20 Ariz.App. at 476–77, 513 P.2d at 1359–60. The court concluded that because the Commission's formula in effect spread the taxpayer's actual federal tax bill too thin by allocating it among foreign and domestic sources on an equal basis without regard to the effect of foreign tax credits, the Commission's formula

... does not allow the taxpayer to take the full deduction contemplated by the statute [former A.R.S. § 43–126(A)(5) ], that is, a deduction from its gross Arizona income of that portion of the federal income tax paid which is allocable to its income taxable by Arizona.

20 Ariz.App. at 476, 513 P.2d at 1359.[3]

With this background, we turn to *Arizo-*

3. The court also noted:

The formula utilized by Anderson Clayton demonstrates one approach which might be

*na Department of Revenue v. Transamerica Title Insurance Company*, 124 Ariz. 417, 604 P.2d 1128 (1979). As in the instant case, *Transamerica Title* dealt with calculating the share of an affiliated group's consolidated federal income tax liability that a group member could deduct on its Arizona income tax return. The taxpayers were three subsidiaries of Transamerica Corporation. For each of the three taxable years in question, the parent corporation filed consolidated federal income tax returns on behalf of all members of an affiliated group. To calculate their state deductions for federal taxes, each taxpayer-subsidiary prepared a separate federal income tax return as though it were not a member of the affiliated group. These returns were never filed with the Internal Revenue Service, but instead were forwarded to the parent with a check for the federal income tax "liability" computed on the return. Because the consolidated federal return the parent actually filed took advantage of losses incurred by other subsidiaries in the affiliated group, the aggregate of the federal income tax payments from the subsidiaries exceeded the affiliated group's actual federal income tax liability for each of the years in question. For that reason ADR partially disallowed the deductions. The trial court, however, held for the taxpayer-subsidiaries.

On appeal, our supreme court resolved four issues, two of which are pertinent here. First, the court held that federal income taxes attributable to the taxpayer-subsidiaries were not "paid" within the meaning of former A.R.S. § 43–123(C) until preparation of the consolidated return, which determined the amount the federal government would actually receive. Accordingly, the court concluded that the taxpayer-subsidiaries could not deduct in full the payments they made to the parent corporation based upon their *ad hoc* individual federal returns, but were limited to their *proportionate shares* of the consolidated federal tax liability, calculated by ADR's net-to-net method.

The *Transamerica Title* court was also faced with the question of

> whether the subsidiaries' proportionate shares of the consolidated tax liability should be computed before foreign tax credits and investment tax credits are subtracted from the amount that the parent would otherwise pay the federal government. It was uncontradicted that these credits are derived mainly from non-Arizona income.

124 Ariz. at 423, 604 P.2d at 1134. After determining that this issue was properly raised on appeal, the court stated:

> The Court of Appeals in *Anderson, Clayton & Co. v. DeWitt*, 20 Ariz.App. 474, 513 P.2d 1357 (1973) dealt with the relationship between foreign tax credits, as deducted from a corporation's federal income tax return, and its Arizona tax return. This case held that the Department had to allow the corporation to deduct as federal income taxes paid the amount that the corporation would have paid if the foreign tax credit had not been taken. The court stated that the full deduction contemplated by the statute was a deduction of federal income tax allocable to its income taxable by Arizona. Since the foreign tax credits were derived from unrelated foreign source income, the Court of Appeals ap-

followed by the Commission to substantially correct the imbalance. As Anderson Clayton points out in its brief, the approach utilized by it in filing its returns is not necessarily the exclusive method of achieving the statutorily required results. An alternative method urged by Anderson Clayton in the trial court and on this appeal would utilize the formula advanced by the Commission except that the denominator would include only "United States income" (related or unitary income in this fact situation), instead of "worldwide income" (the related or unitary income plus unrelated foreign source or situs income).

Under this approach we would take Arizona income over United States income times the federal taxes actually paid. The result would be the allowable federal tax deduction. This is the formula previously suggested in an opinion rendered by the Arizona Attorney General (footnote omitted), and this approach would result in restoring balance to the Commission's formula in that the foreign source income would be removed entirely from the formula, thereby offsetting the deduction of the tax on that income which has been previously removed by the foreign tax credit.
20 Ariz.App. at 477–78, 513 P.2d at 1360–61.

proved a formula which provided that the amount of federal income taxes deductible on the the corporation's Arizona return should be the amount of federal income taxes as calculated *before* the foreign tax credits were taken.

In the present case the trial court's findings of fact and law applied the *Anderson* rationale to both the foreign tax credits and investment tax credits. Since the Department suggests no other alternatives and because we feel that investment tax credits earned on non-Arizona income present an analogous situation to foreign tax credits, we approve the trial court's method of allowing the federal income tax deduction to include the subsidiaries' proportionate share of the consolidated federal income tax before foreign tax credits and investment tax credits earned on non-Arizona income are subtracted.

*Id.*

From the outset, we respectfully question the soundness of the analogy *Transamerica Title* drew between foreign tax credits and investment tax credits. While we recognize that, in general, there is no fundamental entitlement to a tax credit under any circumstances and that all tax credits are simply tax "subsidies" enacted by Congress to promote some legislative policy, we perceive a compelling distinction between a credit (such as the investment tax credit) enacted to promote some external, unrelated social policy, and a credit enacted to directly eliminate double taxation and promote equity and neutrality.

As this court indicated in *Anderson, Clayton,* domestic corporations are taxable on their worldwide income from *all sources. See* 26 U.S.C. § 7701(a)(4). That is, a multinational taxpayer's foreign source income is included in its gross income for purposes of determining the taxpayer's federal income tax liability. *See* 26

U.S.C. § 61(a). Thus, the taxpayer's foreign source income accounts for an identifiable proportionate share of its gross federal income tax liability. At the same time, however, an amount corresponding to the taxes paid by the multinational taxpayer to a foreign government on the taxpayer's foreign source income is allowed as a credit against its gross federal (U.S.) income tax liability. *See* 26 U.S.C. § 901 *et seq.* The result is the taxpayer's actual federal income tax bill.[4] Accordingly, in contrast to the taxpayer's gross federal income tax liability, its actual post-credit tax bill does not fully reflect the inclusion of foreign source income in its gross income figure. Thus, determining the Arizona share of the taxpayer's federal taxes by allocating its actual post-credit tax bill in the proportion that Arizona income bears to worldwide income will yield an underapportionment. Applying that ratio to the taxpayer's *gross* pre-credit federal income tax liability, which simply consists of its actual federal income tax bill increased by its foreign tax credits, eliminates the underapportionment and assigns to Arizona an accurate pro-rata share of the tax bill actually paid.[5]

Investment tax credits do not operate in the same manner. Unlike foreign tax credits, investment tax credits do not correspond to an identifiable portion of the taxpayer's total income as reflected in the denominator of the net-to-net ratio. *See generally* 26 U.S.C. § 46 *et seq.* Stated differently and in contrast to the foreign tax credit, the portion of the taxpayer's gross federal tax liability that is extinguished by investment tax credits is not determined by reference to any particular portion of the taxpayer's total income included in the denominator of the fraction used to apportion the federal tax bill among the separate income sources that gave rise to it. Indeed, investment tax credits bear no necessary relationship to income at all. Instead, they are based

---

4. *See generally* 47A C.J.S. *Internal Revenue* § 438 (1985).

5. For example, a 50% taxpayer with $1,000 of worldwide income of which $300 is foreign source income, and $200 of the remaining $700 of U.S. source income is Arizona source income,

and having a foreign tax credit of $150 would, under the holding in *Anderson, Clayton,* correctly allocate $100 of the federal income tax liability to Arizona. Were a gross-up not permitted, the federal tax liability would result in a $30 underapportionment to Arizona.

upon a taxpayer's capital expenditures, from any source, for certain depreciable property such as production equipment or business computer systems, the purchase of which the United States government seeks to encourage as a matter of legislative policy.[6] *See* 26 U.S.C. § 48. Accordingly, in contrast to the treatment of foreign tax credits in *Anderson, Clayton*, it makes no logical sense to include within the total federal tax figure to be allocated to an Arizona subsidiary, the value of those federal income taxes of the affiliated group that were cancelled by non-Arizona investment tax credits.

Examining the actual effect of the AS & R formula makes this very clear. Adding the affiliated group's non-Arizona investment tax credits to the group's consolidated net federal tax liability yields, by definition, a sum which is greater than the amount which the affiliated group has actually paid in federal income taxes.[7] Accordingly, when that figure is multiplied by the net-to-net ratio for AS & R, the product is a figure which *exceeds* AS & R's actual share of the group's consolidated net federal tax liability. The effect of the formula is thus to allocate to AS & R a share of that portion of the group's gross federal tax liability that was actually extinguished by its non-Arizona investment tax credits.

This, in turn, allows AS & R to deduct, as part of its "share" of the affiliated group's federal taxes, an amount that includes an allocated percentage of a sum (the non-Arizona investment tax credits), that was never in fact paid as federal taxes. Since AS & R's formula does not subtract from this "share" the investment tax credits actually taken, the entire excess component of AS & R's "share" is carried through as part of its state deduction for federal income taxes. The result is a more generous deduction than that contemplated by the Arizona statutes.[8]

Despite our misgivings concerning *Transamerica Title*, however, we cannot agree with ADR that that case may be distinguished or otherwise read to authorize the allocation formula advanced by ADR. It is well-settled that prior decisions of the Supreme Court of Arizona may be modified or disaffirmed by that court alone. *Rodriquez v. Salt River Valley Water Users' Association*, 19 Ariz.App. 223, 506 P.2d 263 (1973); *Robles v. Severyn*, 19 Ariz.App. 61, 504 P.2d 1284 (1973). It is true that the court's opinion in *Transamerica Title* espoused the proposition that only an amount proportionate to the federal income taxes *actually paid* by the parent corporation may be deducted, and

---

**6.** *See generally* 47A C.J.S. *Internal Revenue* §§ 314–18 (1985). The policy underlying the foreign tax credit, on the other hand, is to eliminate the problem of double taxation. Because virtually all countries tax on the basis of source and most countries tax on the basis of residence or citizenship as well, it is common for two jurisdictions to tax the same income, one on the basis of source, the other on residence or citizenship or both. Without some adjustment this pattern would greatly inhibit transnational investment, technology transfer, and other transactions. Accordingly, the concept of the foreign tax credit is simple: the country of residence or citizenship allows, as a credit against its taxes, taxes paid to the country of source. *See generally* Hellawell & Pugh, *The Study of Federal Tax Law: Transnational Transactions*, Para. 1501, 81 (1983).

**7.** This is due to the fact that a tax credit, by definition, operates to reduce, dollar for dollar, the *net* tax liability otherwise payable; i.e., each dollar of tax credit will directly reduce a dollar of tax liability.

**8.** We note that the formula urged by ADR is equally subject to criticism. ADR's formula adds all of the affiliated group's investment tax credits to the group's pre-credit consolidated net federal tax liability, thus computing the group's consolidated gross federal tax liability. It then multiplies this figure by AS & R's net-to-net ratio, which effectively assigns to AS & R a share of the consolidated gross federal tax liability equal to the sum of AS & R's net-to-net ratio share of consolidated net federal tax liability and a net-to-net ratio share of the affiliated group's total investment tax credits from all sources. Finally, ADR's formula deducts from that share the investment tax credits actually generated by AS & R, which may or may not equal AS & R's allocated share of the affiliated group's total investment tax credits. The reliability of ADR's formula in calculating a group member's fair share of the federal taxes actually paid by the affiliated group may thus vary substantially where the group member's net-to-net ratio share of the group's total investment tax credits is substantially different from its actual contribution to that total.

that AS & R's formula fails to conform to that principle. It is also true, however, that in *Transamerica Title,* our supreme court expressly approved the very formula which AS & R seeks to use in this case. Unlike ADR, we do not read the court's opinion as leaving the door open for other methods of calculation. The court approved the formula urged by AS & R not solely because ADR suggested no other alternatives in that case, but also expressly because it concluded "that investment tax credits earned on non-Arizona income present an analogous situation to foreign tax credits...." 124 Ariz. at 423, 604 P.2d at 1134.

We also reject ADR's attempt to distinguish *Transamerica Title* on the ground that in the instant case the Arizona investment tax credits formed a greater proportion of the affiliated group's investment tax credits from all sources than did the Arizona investment tax credits involved in *Transamerica Title.* Nothing in the court's opinion supports the view that the court approved the inclusion of non-Arizona investment tax credits in the quantity to be allocated on the ground that the Arizona investment tax credits in that case formed only a small percentage of the affiliated group's total investment tax credits. Instead, because the court based its specific holding on the analogy it drew between investment tax credits and the *Anderson, Clayton* treatment of foreign tax credits, and because the court acknowledged the existence of Arizona investment tax credits in the case before it and yet specifically held that allocation should take place "before ... investment tax credits earned on non-Arizona income are subtracted," we think it is plain that the court's approval of the formula now urged by AS & R was intentional and not inadvertent. Accordingly, *Transamerica Title* required the trial court to grant summary judgment for AS & R, and requires us to affirm that judgment on appeal.

Because of our resolution of this appeal, we need not consider whether AS & R actually relied on *Transamerica Title* in preparing its 1978 and 1979 Arizona income tax returns, or whether certain of ADR's

affidavits in connection with the cross-motions for summary judgment were defective.

AS & R requests an award of attorney's fees on appeal pursuant to A.R.S. § 12–348. We grant the request. AS & R may establish the amount of its award by complying with Rule 21(c), Arizona Rules of Civil Appellate Procedure, and our decision in *Schweiger v. China Doll Restaurant, Inc.,* 138 Ariz. 183, 673 P.2d 927 (App.1983).

Accordingly, the summary judgment is affirmed.

GRANT, J., and ULRICH, J. Pro Tem., concur.

NOTE: The Honorable PAUL G. ULRICH, Judge Pro Tempore has been authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Ariz.Const. art. VI, § 3 and A.R.S. §§ 12–145 and 12–147.